| | | |
|---|---|---|
| Christina Ryan | * | IN THE |
| P.O. Box 462 | | |
| Hanover, MD 21076 | * | UNITED STATES DISTRICT |
| | | |
| Plaintiff, | * | COURT FOR THE |
| | | |
| v. | * | DISTRICT OF MARYLAND |
| | | |
| Kevin K. McAleenan, Acting Secretary | * | |
| U.S. Department of Homeland Security | | |
| (Transportation Security Administration) | * | |
| Washington, D.C. 20528 | | |
| | * | |

Serve on:

| | | |
|---|---|---|
| Kevin K. McAleenan, Acting Secretary | * | |
| U.S. Department of Homeland Security | | |
| (Transportation Security Administration) | * | |
| Washington, D.C. 20528 | | |
| | * | |
| William Barr, Attorney General | | |
| U.S. Department of Justice | * | |
| 950 Pennsylvania Avenue, NW | | |
| Washington, DC 20530-0001 | * | |
| | | |
| Civil Service Clerk | * | |
| U.S. Attorney's Office | | |
| District of Maryland | * | |
| 36 S. Charles Street, Fourth Floor | | |
| Baltimore, Maryland 21201 | * | |

*     *     *     *     *     *     *     *     *     *     *     *

## COMPLAINT

**COMES NOW**, Christina Ryan, by and through her attorneys, Paul V. Bennett, Esq., Jeffrey J. Sadri, Esq., and Bennett & Ellison, P.C., and hereby sues Kevin K. McAleenan, Acting Secretary, Department of Homeland Security (hereinafter "DHS") and states as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (hereinafter "Title VII").

2.      This Court has jurisdiction pursuant to the Age Discrimination in Employment Act of

1967, as amended, 29 U.S.C. § 621, *et seq.* (hereinafter "ADEA").

3.      That all the actions complained of herein took place at the Transportation Security

Administration's Baltimore-Washington International Thurgood Marshall Airport, a

DHS component, in Baltimore, Maryland (hereinafter referred to as "BWI Airport").

4.      That at all times relevant hereto, Defendant DHS is a federal government agency

employing twenty (20) or more persons, and is an "employer" within the meaning of

Title VII and the ADEA.

5.      That all the actions complained of herein took place at BWI Airport in Baltimore,

Maryland.

6.      From 2007-2012, Plaintiff filed Equal Employment Opportunity ("EEO") claims with

the Defendant.

7.      On March 13, 2015, Plaintiff contacted Defendant's "Transportation Security

Administration-Civil Rights Division" (hereinafter "TSA Civil Rights Division") to

file an EEO claim.

8.      On April 3, 2015, Plaintiff submitted an "Equal Employment Intake Sheet" to the

TSA Civil Rights Division.

9.      On April 27, 2015, Plaintiff initiated contact with an EEO Counselor.

10.     On June 13, 2015, Plaintiff filed a formal EEO Complaint and alleged therein race,

color, and age-based discrimination, as well as retaliation for engaging in protected

EEO activity.

11.     On November 3, 2015, Plaintiff initiated contact with an EEO Counselor.

12.     In November and December of 2015, Plaintiff requested to amend her formal EEO

        Complaint. Plaintiff's request was granted.

13.     In January of 2016, Plaintiff requested to amend her formal EEO Complaint.

        Plaintiff's request was granted.

14.     In accordance with Title VII, the ADEA, and the Code of Federal Regulations

        ("CFR)", Plaintiff has thereby properly exhausted her administrative remedies before

        timely filing suit.

### FACTS COMMON TO ALL COUNTS

15.     Plaintiff's race is Caucasian. Defendant was aware at all times herein of Plaintiff's

        race.

16.     Plaintiff's year of birth is 1960. Defendant was aware at all times herein of Plaintiff's

        age.

17.     At all times relevant herein, Plaintiff has worked for Defendant as a Master Behavior

        Detection Officer ("MBDO"), Pay Band F, at BWI Airport.

18.     From approximately May of 2014 to November 4, 2014, Plaintiff worked the AM

        Shift.

19.     From approximately November of 2014 to May of 2015, Plaintiff worked the PM

        Shift.

20.     As of October of 2015, Plaintiff was paid approximately forty-three thousand two

        hundred fifty dollars ($43,250) in salary per year.

21.     Erica Foster Gibbs (African-American, born in 1985), employed by Defendant as a

        Supervisory Transportation Security Officer ("STSO"), served as Plaintiff's

        supervisor from approximately May of 2014 to October 29, 2014.

22.     Starting on or about October 30, 2014, John Chambers III (African-American, year of birth unknown), employed by Defendant as a Behavior Detection Officer Supervisor ("BDOS"), became Plaintiff's immediate supervisor.

23.     At all times relevant hereto, Scott Wood (Caucasian, born in 1961), employed by Defendant as a Senior Behavior Detection and Analysis Transportation Security Manager ("BDA TSM"), served as Plaintiff's second-level supervisor.

24.     In May or June of 2014, after Plaintiff told Ms. Gibbs that she had approximately ten (10) Online Learning Center courses to complete, Ms. Gibbs put her face within one (1) inch of Plaintiff's face with a hostile look, grabbed Plaintiff's Chair, and then blocked Plaintiff's access to the exit before Plaintiff left the room.

25.     In July of 2014, Ms. Gibbs told Plaintiff that she was the only "white Caucasian" MBDO on the AM shift.

26.     In or about June of 2014, Mr. Wood denied Plaintiff's request for a transfer out of Ms. Gibbs' group, and told her that if she wanted a transfer, she would need to get a court order. Based upon information and belief, Mr. Wood's mention of "court order" was made in reference to her prior EEO sexual assault/harassment complaint in which she obtained a court order to protect her from the perpetrator.

27.     In or about the summer of 2014, Chadea Grant (African-American, born in 1989) and Brandy Durant (African-American, believed to be over forty (40) years of age), employed by Defendant as MBDOs, requested transfers out of Ms. Gibbs' group. Upon information and belief, Mr. Wood granted their requests without issue.

28.     On several occasions in June of 2014, Ms. Gibbs scowled at Plaintiff whenever she (Plaintiff) received a work call.

29.     On July 5, 2014, Ms. Gibbs interrupted Plaintiff when she was on a business call with

        information technology personnel and forced her to end the call.

30.     In July of 2014, Ms. Gibbs told Plaintiff not to lean on a stanchion and did so in a

        demeaning and condescending manner.

31.     In July of 2014, Ms. Gibbs chastised Plaintiff for about one (1) hour in an attempt to

        convince Plaintiff to modify her written statement which was addressed to

        management and concerned Ms. Gibbs' hostile behavior. Plaintiff complained about

        Ms. Gibbs' hostile behavior to Mr. Wood via email.

32.     On or about August 31, 2014, Ms. Gibbs accused Plaintiff of exhibiting

        unsatisfactory work performance and told Plaintiff to meet with her in the Behavior

        Detection Officer ("BDO") Office for a counseling session. Mr. Wood and David

        Marzola (Caucasian, born in 1961), employed by Defendant as the Assistant Federal

        Security Director ("AFSD"), refused to let Plaintiff have a witness present for said

        meeting. James Clapp (African-American, born in 1990), employed by Defendant as

        a BDO, exhibited poor performance on August 31, 2014, but was not counseled.

33.     On October 12, 2014, Mr. Wood and Mr. Marzola falsely accused Plaintiff of

        spraying Lysol on an African-American passenger who was wearing African

        clothing. On November 14, 2014, Plaintiff complained to Mr. Marzola about the

        falsity of the allegation, but he did not address her complaint.

34.     In November of 2014, Mr. Marzola made fun of Plaintiff when he said "sometimes

        you can only see an elbow in the video;" based on information and belief, this was a

        reference to Plaintiff's 2007 sexual assault and harassment complaint. In the video of

the assault, a viewer can only see the perpetrator's elbow because he was behind a pole during the commission of the assault.

35.     On January 29, 2015, Mr. Wood issued Plaintiff a Letter of Reprimand for allegedly making inappropriate comments to Kelly Duppins (African-American, believed to be over forty (40) years of age), employed by a private contractor and assigned to work as an Operation Test Team ("OTT") member at BWI Airport, about Defendant's "fatigue mats" on October 10, 2014.

36.     In February of 2015, Plaintiff applied for a vacant Supervisory Behavior Detection Officer ("SBDO"), Pay Band G position with the Defendant.

37.     On March 25, 2015, Plaintiff was interviewed via telephone for the aforementioned vacant SBDO position.

38.     On April 20, 2015, Defendant notified Plaintiff that she had not been selected for a vacant SBDO position. Francesca Torrance (believed to be Caucasian and under forty (40) years of age), Signora Carmouche (African-American and believed to be under forty (40) years of age, Detlev Hetzler (believed to be Caucasian and under forty (40) years of age), Morris Cobb (African-American, born in 1975, no prior EEO activity), and John Chambers III (African-American, born in 1962, no prior EEO activity), all of whom were BDOs, were selected for vacant SBDO positions. Ms. Carmouche denied the offer, at which point Brandy Durant (African-American, believed to be over forty (40) years of age), was selected for a SBDO position. Mr. Marzola acted as the selecting official.

39.     On May 22, 2015, Plaintiff complained to Mr. Wood via email about the aforementioned Letter of Reprimand.

40.    On or about June 4, 2015, Plaintiff learned that Mr. Wood had previously remarked that management was "watching" her.

41.    In August of 2015, Plaintiff applied for a vacant "Expert Transportation Security Officer - Lead Behavior Detection Officer" ("LBDO"), Pay Band G position.

42.    On October 1, 2015, Plaintiff was interviewed for the aforementioned vacant LBDO position.

43.    On or about October 16, 2015, Colin Rhodes (Hispanic, born in 1991), employed by Defendant as a MBDO, physically intimidated Plaintiff. Prior thereto, Mr. Rhodes had called Plaintiff a "racist" and had referred to her as being "old."

44.    On October 19, 2015, Plaintiff learned that she was not selected for the LBDO position. The four (4) LBDO selectees were Maria Little (Hispanic, born in 1963), William Gilbert (non-Caucasian, born in 1960), Chadea Grant (African-American, born in 1989), and Robert Williams (African-American, born in 1982). Mr. Marzola was the selecting official.

45.    Sometime in October of 2015, Plaintiff was accused of "fudging" a doctor's note.

46.    On October 31, 2015, Mr. Cobb and Mr. Chambers (both SBDOs) called Plaintiff into the Coordination Center Room for an Interest-Based Conversation ("IBC") and accused her of exhibiting unsatisfactory work performance on October 16, 2015. They refused her request that a witness be present and that the conversation not be recorded. Plaintiff was further told that she was obsessed with "fatigue mats."

47.    On November 1, 2015, Plaintiff received a transcript of the aforementioned IBC. Plaintiff suspected that it had been recorded without her consent.

48.     On several occasions from approximately August of 2015 to February of 2016, Mr. Rhodes asked Plaintiff questions she found uncomfortable, including (1) whether she was dating another employee; (2) where she lived; (3) where she went on vacation; (4) what she did for fun; (5) whether she was a grandmother; etc.

49.     Defendant's upper management officials micromanaged Plaintiff's work performance but did not do the same with her African-American colleagues.

50.     At all times relevant herein, Plaintiff met and/or exceeded Defendant's legitimate job expectations.

**COUNT I**
**RACIAL DISCRIMINATION**
**(Disparate Treatment)**
**Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. § 2000e, *et seq.***

51.     Plaintiff hereby restates and incorporates paragraphs 1 through 50 of this Complaint as though fully set forth herein.

52.     Plaintiff was qualified and satisfactorily performing her duties as a Master Behavior Detection Officer.

53.     That Defendant carried out the aforementioned acts of discrimination against Plaintiff on the basis of her race (Caucasian) – a protected class under Title VII.

54.     That the aforementioned acts constitute unlawful practices pursuant to Title VII.

55.     That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her race (Caucasian).

56.     That the unlawful employment practices complained of above were intentional.

57.   That Plaintiff's request for a transfer out of Ms. Gibbs' group was denied in or about June of 2014.

58.   That Chadea Grant and Brandy Durants' (both African-American) requests for a transfer out of Ms. Gibbs' group were granted in or about the summer of 2014.

59.   That Plaintiff applied for a vacant Supervisory Behavior Detection Officer ("SBDO") position in February of 2015 and was qualified for same.

60.   That, on April 20, 2015, Plaintiff was rejected for a vacant SBDO position.

61.   That Plaintiff's qualifications and experience were plainly superior to those of Signora Carmouche (African-American), Morris Cobb (African-American), John Chambers III (African-American), and Brandy Durant (African-American), all of whom were selected for a vacant SBDO position.

62.   That Defendant's failure to select Plaintiff for a SBDO position was thereby motivated by discriminatory animus.

63.   That Plaintiff applied for a vacant "Expert Transportation Security Officer - Lead Behavior Detection Officer" ("LBDO") position in August of 2015 and was qualified for same.

64.   That, on October 19, 2015, Plaintiff was rejected for a vacant LBDO position.

65.   That Plaintiff's qualifications and experience were plainly superior to those of Maria Little (Hispanic), William Gilbert (non-Caucasian), Chadea Grant (African-American), and Robert Williams (African-American), all of whom were selected for a vacant LBDO position.

66.   That Defendant's failure to select Plaintiff for a LBDO position was thereby motivated by discriminatory animus.

67.     That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation, and mental anguish.

68.     That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT II
## AGE DISCRIMINATION
### (Disparate Treatment)
**Age Discrimination in Employment Act of 1967, as amended,
29 U.S.C. § 621, *et seq.***

69.     Plaintiff hereby restates and incorporates paragraphs 1 through 50 of this Complaint as though fully set forth herein.

70.     Plaintiff was qualified and satisfactorily performing her duties as a Master Behavior Detection Officer.

71.     That Defendant carried out the aforementioned acts of discrimination against Plaintiff on the basis of her age (born in 1960) – a protected class under the ADEA.

72.     That the aforementioned acts constitute unlawful practices pursuant to the ADEA.

73.     That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her age (born in 1960).

74.     That the unlawful employment practices complained of above were intentional.

75.     That Plaintiff's request for a transfer out of Ms. Gibbs' group was denied in or about June of 2014.

76.    That Chadea Grant's (born in 1989) request for a transfer out of Ms. Gibbs' group was granted in or about the summer of 2014.

77.    That Plaintiff applied for a vacant Supervisory Behavior Detection Officer ("SBDO") position in February of 2015 and was qualified for same.

78.    That, on April 20, 2015, Plaintiff was rejected for a vacant SBDO position.

79.    That Plaintiff's qualifications and experience were plainly superior to those of Francesca Torrance (believed to be under forty (40) years of age), Signora Carmouche (believed to be under forty (40) years of age), Detlev Hetzler (believed to be under forty (40) years of age), and Morris Cobb (born in 1975), all of whom were selected for a vacant SBDO position.

80.    That Defendant's failure to select Plaintiff for a SBDO position was thereby motivated by discriminatory animus.

81.    That Plaintiff applied for a vacant "Expert Transportation Security Officer - Lead Behavior Detection Officer" ("LBDO") position in August of 2015 and was qualified for same.

82.    That, on October 19, 2015, Plaintiff was rejected for a vacant LBDO position.

83.    That Plaintiff's qualifications and experience were plainly superior to those of Chadea Grant (born in 1989) and Robert Williams (born in 1982), who were both selected for a vacant LBDO position.

84.    That Defendant's failure to select Plaintiff for a LBDO position was thereby motivated by discriminatory animus.

85.    That Plaintiff's age was the "but-for factor" behind the described adverse treatment.

86.     That the discriminatory actions, as set forth above, have caused and will continue to

        cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress,

        humiliation, and mental anguish.

87.     That the intentional discriminatory actions of Defendant, as alleged above, were done

        with malice and/or with reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT III**
**RETALIATION**
**(Adverse Actions and Protected Activity Deterrents)**
**Title VII of the Civil Rights Act of 1964, as amended,**
**42  U.S.C. § 2000e,** *et seq.*

88.     Plaintiff hereby restates and incorporates paragraphs 1 through 50 of this Complaint

        as though fully set forth herein.

89.     From 2007-2012, Plaintiff filed Equal Employment Opportunity ("EEO") claims with

        the Defendant.

90.     On March 13, 2015, Plaintiff contacted Defendant's "Transportation Security

        Administration-Civil Rights Division" ("TSA Civil Rights Division") to file an EEO

        claim.

91.     On April 3, 2015, Plaintiff submitted an "Equal Employment Intake Sheet" to the

        TSA Civil Rights Division.

92.     On April 20, 2015, Defendant notified Plaintiff that she had not been selected for a

        vacant SBDO position, despite being highly qualified for same.

93.     On April 27, 2015, Plaintiff initiated contact with an EEO Counselor.

94.     On June 13, 2015, Plaintiff filed a formal EEO Complaint and alleged therein race, color, and age-based discrimination, as well as retaliation for engaging in protected EEO activity.

95.     On October 19, 2015, Plaintiff learned that she was not selected for the LBDO position, despite being highly qualified for same.

96.     The aforementioned complaints with the TSA Civil Rights Division and EEO office constitute "legally protected activities" under Title VII.

97.     The aforementioned legally protected activities were known by upper management to have occurred.

98.     The subsequent non-selections for vacant SBDO and LBDO positions, as set forth in the above-referenced facts common to all counts, amounted to illegal retaliation, as Defendant's actions were motivated to punish Plaintiff for engaging in legally protected activities and were intended to dissuade others from engaging in similarly legally protected activities. Indeed, the net effect of failing to select Plaintiff for vacant positions was to likely dissuade others from engaging in legally protected activities.

99.     That the aforementioned acts of retaliation for complaining about illegal employment practices constituted unlawful employment practices pursuant to Title VII.

100.    That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee based upon her legally protected activities.

101.    That the intentional retaliatory actions complained of above were done with malice and/or with reckless indifference to Plaintiff's rights.

102.   As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has

suffered lost wages and benefits, emotional distress, attorney's fees, and litigation

costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT IV**
**RETALIATION**
**(Adverse Actions and Protected Activity Deterrents)**
**Age Discrimination in Employment Act of 1967, as amended,**
**29 U.S.C. § 621,** *et seq.*

103.   Plaintiff hereby restates and incorporates paragraphs 1 through 50 of this Complaint

as though fully set forth herein.

104.   From 2007-2012, Plaintiff filed Equal Employment Opportunity ("EEO") claims with

the Defendant.

105.   On March 13, 2015, Plaintiff contacted Defendant's "Transportation Security

Administration-Civil Rights Division" ("TSA Civil Rights Division") to file an EEO

claim.

106.   On April 3, 2015, Plaintiff submitted an "Equal Employment Intake Sheet" to the

TSA Civil Rights Division.

107.   On April 20, 2015, Defendant notified Plaintiff that she had not been selected for a

vacant SBDO position, despite being highly qualified for same.

108.   On April 27, 2015, Plaintiff initiated contact with an EEO Counselor.

109.   On June 13, 2015, Plaintiff filed a formal EEO Complaint and alleged therein race,

color, and age-based discrimination, as well as retaliation for engaging in protected

EEO activity.

110.    On October 19, 2015, Plaintiff learned that she was not selected for the LBDO
         position, despite being highly qualified for same.

111.    The aforementioned complaints with the TSA Civil Rights Division and EEO office
         constitute "legally protected activities" under the ADEA.

112.    The aforementioned legally protected activities were known by upper management to
         have occurred.

113.    The subsequent non-selections for vacant SBDO and LBDO positions, as set forth in
         the above-referenced facts common to all counts, amounted to illegal retaliation, as
         Defendant's actions were motivated to punish Plaintiff for engaging in legally
         protected activities and were intended to dissuade others from engaging in similarly
         legally protected activities. Indeed, the net effect of failing to select Plaintiff for
         vacant positions was to likely dissuade others from engaging in legally protected
         activities.

114.    That the aforementioned acts of retaliation for complaining about illegal employment
         practices constituted unlawful employment practices pursuant to the ADEA.

115.    That the effect of the practices complained of above was to deprive Plaintiff of equal
         employment opportunities and otherwise adversely affect her status as an employee
         based upon her legally protected activities.

116.    That the intentional retaliatory actions complained of above were done with malice
         and/or with reckless indifference to Plaintiff's rights.

117.    As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has
         suffered lost wages and benefits, emotional distress, attorney's fees, and litigation
         costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## PRAYER FOR DAMAGES

WHEREFORE, for the foregoing reasons, Christina Ryan, Plaintiff, demands judgment against Kevin K. McAleenan, Acting Secretary, Department of Homeland Security (hereinafter "DHS") as follows:

a. Back pay and interest on same;

b. $300,000.00 as compensatory damages;

c. Promotion to higher level position, *e.g.* LBDO & SBDO;

d. Clean personnel record;

e. Prejudgment and post judgment interest;

f. Award attorney's fees and costs, including expert witness fees, as allowed by law;

g. And for such other and further relief as this Honorable Court deems just and equitable.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

Respectfully submitted,

_____/s/_____

Paul V. Bennett, Esq. (Bar No. 10324)
Bennett & Ellison, P.C.
2086 Generals Highway, Ste. 201
Annapolis, Maryland 21401
(410) 974-6000
(410) 224-4590 Fax
pbennett@belawpc.com

_____/s/_____

Jeffrey J. Sadri, Esq. (Bar No. 19118)
Bennett & Ellison, P.C.
2086 Generals Highway, Ste. 201
Annapolis, Maryland 21401
(410) 974-6000
(410) 224-4590 Fax
jsadri@belawpc.com

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Christina Ryan, Plaintiff, hereby demands that this matter be tried by jury.

_____/s/_____

Paul V. Bennett, Esq. (Bar No. 10324)

_____/s/_____

Jeffrey J. Sadri, Esq. (Bar No. 19118)

17