IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTINA RYAN
    *Plaintiff*,

    v.

                               Civil Action No. ELH-19-1968

KEVIN K. MCALEENAN
    *Defendant*

**MEMORANDUM OPINION**

In this employment discrimination case, Christina Ryan has filed suit against Kevin McAleenan, then the Acting Secretary of the Department of Homeland Security ("DHS"). ECF 1 (the "Complaint").[1] She is employed by the Transportation Security Administration ("TSA"), a component of DHS, as a Master Behavior Detection Officer ("MDBO") at the Baltimore Washington International Thurgood Marshall Airport ("BWI"). ECF 1, ¶¶ 15-17.

Plaintiff, a Caucasian woman, was born in 1960 and was 60 years of age when suit was filed. *Id.* ¶ 16. She alleges, *inter alia*, that she was not selected for two promotions because of her race and her age, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA").

The Complaint contains four counts. In Count I, plaintiff asserts a claim of "RACIAL DISCRIMINATION (Disparate Treatment)" under Title VII. In Count II, she asserts an ADEA

---

[1] Mr. McAleenan resigned on October 11, 2019. *See* Franco Ordonez, *Acting Homeland Secretary Kevin McAleenan is Out*, NPR (Oct. 11, 2019 8:08 p.m.), https://n.pr/33BgJQN. However, neither party has sought to substitute another defendant. Pursuant to Federal Rule of Civil Procedure 25(d), his successor, Acting Secretary Chad Wolf, is automatically substituted as the proper defendant to this action.

claim of age discrimination based on disparate treatment. Count III alleges a Title VII claim of "RETALIATION (Adverse Actions and Protected Activity Deterrents)." And, Count IV asserts retaliation under the ADEA, on the same grounds asserted as to Count III. Plaintiff seeks $300,000 in compensatory damages, prejudgment and postjudgment interest, and injunctive relief. ECF 1 at 16.

Defendant has moved to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF 7. The motion is supported by a memorandum (ECF 7-1) (collectively, the "Motion") and five exhibits. ECF 7-2 to ECF 7-6. Plaintiff opposes the Motion (ECF 10-1, "Opposition"), and has submitted five exhibits. ECF 10-2 to ECF 10-6. Defendant has replied (ECF 13, "Reply") and submitted two additional exhibits. ECF 13-1 to ECF 13-2. Both parties submitted excerpts of the TSA's Report of Investigation ("ROI"), dated August 3, 2016. *See* ECF 703; ECF 10-2.[2]

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall construe the Motion (ECF 6) as one to dismiss, and I shall grant the Motion, without prejudice.

## I.    Background

### A.  Factual Background

As noted, Ms. Ryan is a Caucasian woman who was born in 1960. ECF 1, ¶¶ 15, 16; ECF 7-3 at 6; ECF 10-2 at 14. She has worked for TSA at BWI since 2004, and as a MBDO since 2014.

---

[2] As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). Further, the Court may consider documents attached to the Complaint or the Motion, "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

ECF 1, ¶ 17; ECF 7-3 at 5; ECF 10-2 at 14.  Between 2007 and 2012, plaintiff "filed a number of" Equal Employment Opportunity ("EEO") complaints against TSA.  ECF 1, ¶ 6.  She also filed an EEO complaint on June 13, 2015.  *Id.* ¶ 10.

From May 2014 to October 2014, Erica Foster Gibbs, who is an African American female born in 1985, served as plaintiff's first-line supervisor.  *Id.* ¶ 21; ECF 10-2 at 7, 10.  Scott Wood, a Caucasian born in 1961, was Ms. Ryan's second-level supervisor.  ECF 1, ¶ 23; ECF 10-2 at 20. John Chambers III, an African American, became plaintiff's first-line supervisor on or about October 30, 2014.  ECF 1, ¶ 22; ECF 10-2 at 28-29.

Plaintiff claims that in May or June of 2014, she informed Ms. Gibbs that she had approximately ten online learning courses to complete.  ECF 1, ¶ 24.  In response, Ms. Gibbs allegedly "put her face within one (1) inch of Plaintiff's face with a hostile look" and prevented Ms. Ryan from exiting the room.  *Id.*  Following this interaction, Ms. Ryan asked Mr. Wood to assign her to a different supervisor.  *Id.* ¶ 26.  According to plaintiff, Mr. Wood denied Ms. Ryan's request in June 2014, telling her that if she wanted a transfer, she would need to get a court order. *Id.* ¶ 26.  Plaintiff perceived that comment as a reference to a prior EEO complaint she had filed concerning sexual assault and harassment, which resulted in a court order.  *Id.*  Moreover, plaintiff alleges that Mr. Wood granted similar requests submitted in the summer of 2014 by MBDOs Chadea Grant and Brandy Durant, both of whom are African American.  *Id.* ¶ 27.

The Complaint also alleges that Ms. Gibbs regularly mistreated plaintiff throughout July and August of 2014.  *Id.* ¶¶ 28-32.  Ms. Gibbs told plaintiff that she was the only "white Caucasian" MBDO on the morning shift.  *Id.* ¶ 25.  She also "scowled" at Ms. Ryan "[o]n several occasions" in June of 2014, when Ms. Ryan received a work call.  *Id.* ¶ 28.  In addition, Ms. Gibbs interrupted plaintiff on July 5, 2014, when she was on a business call with information technology personnel,

and forced her to end the call. *Id.* ¶ 29. Further, "in a demeaning and condescending manner," Ms. Gibbs told plaintiff not to lean on a stanchion. *Id.* ¶ 30. In July 2014, after Ms. Ryan complained to Mr. Wood about Ms. Gibbs's "hostile behavior," Ms. Gibbs "chastised" Ms. Ryan "in an attempt to convince [her] to modify her written statement . . . ." *Id.* ¶ 31. Further, on or about August 31, 2014, Ms. Gibbs accused Ms. Ryan of exhibiting unsatisfactory work performance and demanded a counseling session. *Id.* ¶ 32. According to plaintiff, she was not permitted to have a witness at the meeting. Moreover, James Clapp, an African-American born in 1990, exhibited poor performance on the same date (August 31, 2014), yet he "was not counseled." *Id.*

Plaintiff alleges that on October 12, 2014, Mr. Wood and David Marzola Jr., an Assistant Federal Security Director at BWI, "falsely accused" her of spraying an African-American passenger with Lysol. *Id.* ¶ 33. Mr. Marzola is Caucasian and was born in 1961. *Id.* ¶ 32; ECF 10-2 at 26. Although Ms. Ryan complained to Mr. Marzola on November 14, 2014, about the falsity of the allegations, he failed to address Ms. Ryan's complaint. ECF 1, ¶ 33.

According to plaintiff, Mr. Marzola "made fun" of her in November of 2014, telling her that "'sometimes you can only see an elbow in the video.'" ECF 1, ¶ 34. She avers that this was a reference to plaintiff's 2007 sexual assault and harassment complaint. *Id.*

On January 29, 2015, Mr. Wood issued a "Letter of Reprimand" ("LOR") to Ms. Ryan. ECF 7-3 at 21-23; *see* ECF 1, ¶ 35. It states, in part, ECF 7-3 at 21-23:

> On October 10, 2014, while performing Behavior Detection and Analysis (BDA), you communicated to Operational Test Team (OTT) Member Kelly Duppins, that the mat she was standing upon (yellow borders) were for the exclusive use of BDOs. You advised her that if she needed/wanted a mat she could purchase one at Walmart. OTT Duppins was asked to remove herself from the mat. On the same day, you approached Test Team Lead Don Bennett and asked for OTT Duppins name.

After this incident on or about October 13, 2014, you were overheard telling one of the OTT Duppins Management Team Members that a "sit down" job needed to be located for her so she didn't have to complain about standing on the floor and/or use mats that didn't belong to her.

The interactions were unsolicited and the comments were inappropriate and unprofessional. Furthermore, these interactions occurred in the public area and reflected negatively on you. You have been trained on workforce engagement and that display was not appropriate.

In the LOR, Mr. Wood cited provisions of the TSA Code of Conduct and Handbook that he claimed had been violated. Further, he explained that he had weighed the "nature and seriousness of the misconduct" against "mitigating factors," such as Ms. Ryan's employment at TSA since 2004 and her "otherwise satisfactory performance record." *Id.* at 22. Therefore, Mr. Wood determined that the issuance of the LOR was an "appropriate" penalty. *Id.*

Prior to the issuance of the LOR, Ms. Ryan had been afforded an opportunity to submit a written statement. ECF 7-6 at 6-8. In her statement, Ms. Ryan did not deny that she spoke with Ms. Duppins about using a fatigue mat. But, she denied that her comments were inappropriate. *See id.*

In February 2015, plaintiff applied for a vacant position of Supervisory Behavior Detection Officer ("SBDO"). ECF 1, ¶ 36. Mr. Marzola was the selection official, although he did not interview applicants. *Id.* ¶ 38; *see* ECF 7-3 at 14. Ms. Ryan interviewed for the SBDO position via telephone on March 25, 2015. ECF 1, ¶ 37; *see* ECF 7-3 at 14.

On April 20, 2015, Ms. Ryan was notified that she was not chosen for the position. ECF 1, ¶ 38. Instead, the following employees were selected to serve as SBDOs: Francesca Torrance (Caucasian, under 40); Signora Carmouche (African American, under 40); Detlev Hetzler (Caucasian, under 40); Morris Cobb (African American, born in 1975); and John Chambers III (African American, born in 1962). ECF 1, ¶ 38; ECF 10-2 at 34, 47. According to plaintiff, Ms.

Carmouche "denied" her offer,[3] at which point Brandy Durant (African American, over 40) was selected for a SBDO position. ECF 1, ¶ 38; *see* ECF 7-3 at 15 (Mr. Marzola stating that Torrance, Hetzler, Cobb, Chambers, and Durant were selected for the SBDO positions); ECF 10-2 at 34-35.

Mr. Marzola was asked during the EEO investigation to explain what made the selectees better qualified for the position than plaintiff. ECF 7-3 at 11. He explained, *id.* at 15: "Ms. Ryan had discipline on her record, which was one of the disqualifying factors that I took into account." In contrast, the selected applicants "all had clean disciplinary records." *Id.* Further, Mr. Marzola stated he "took into account the TOPS performance evaluations, resume, interview scores, disciplinary records of each candidate" and that "Ms. Ryan did not rate as high as the candidates that [he] chose." *Id.*

In August 2015, Ms. Ryan applied for a vacant position as an "Expert Transportation Security Officer - Lead Behavior Detection Officer ("LBDO"). ECF 1, ¶ 41. Again, Mr. Marzola was the selecting official. *Id.* ¶ 44. Ms. Ryan learned on October 19, 2015, that she was not selected for the position. *Id.* Rather, the LBDO positions were filled by the following applicants: Maria Little (Hispanic, born 1963); William Gilbert (American Indian, born 1960); Chadea Grant (African American, born 1986); and Robert Williams (African American, born 1982). *Id.*; ECF 7-3 at 19; ECF 10-2 at 47. Here too, Mr. Marzola made the selections based on the applicants' "resume, interviews, TOPS ratings," and he claimed that he excluded Ms. Ryan due to her disciplinary record. ECF 7-3 at 20. In contrast, none of the selectees had disciplinary history at the time that they were selected. ECF 7-3 at 20.

---

[3] Presumably, plaintiff meant to state that Carmouche declined the offer.

**B. Procedural History**

On March 13, 2015, plaintiff emailed Daniel Ricketts, a TSA employee in the Civil Rights Division, "requesting to submit a TSA EEO claim of LOR dated 1-29-2015 within my 45 days." ECF 10-6 (email of March 13, 2015); *see* ECF 1, ¶ 7.  On April 3, 2015, plaintiff  submitted an "Equal Employment Intake Sheet" to TSA.  ECF 1, ¶ 8.  Ms. Ryan contacted an EEO Counselor on April 27, 2015.  *Id.* ¶ 9.  And, on June 13, 2015, plaintiff filed a formal EEO Complaint, alleging discrimination based on race, color, and age, as well as retaliation for engaging in protected EEO activity. ECF 1, ¶ 10; ECF 7-3 at 6-7.  In November and December 2015 and in January 2016, plaintiff sought to amend her EEO complaint, which was granted.  ECF 1, ¶¶ 12, 13.

In response to the EEO Complaint, TSA conducted an investigation and, on August 3, 2016, TSA notified plaintiff that the investigation had been completed.  ECF 7-2.  TSA also forwarded to plaintiff a copy of the investigative file and provided plaintiff with notice of her right to request a hearing before an Administrative Judge ("AJ") with the Equal Employment Opportunity Commission ("EEOC") or, alternatively, to receive a Final Agency Decision ("FAD") from DHS.  ECF 7-2.  As noted, plaintiff submitted portions of the Report of Investigation as an exhibit to her Opposition.  ECF 10-2 at 1-47.  The ROI reflects that numerous documents and exhibits were considered.  *See* ECF 703 at 2-3.

Ms. Ryan requested a hearing before an AJ.[4]  *See* ECF 7-4.  On December 6, 2017, the AJ issued a "Discovery Order," providing the parties with 90 days to engage in discovery.  ECF 13-1 at 4.  Pursuant to the Discovery Order, each party was entitled to 30 interrogatories, 30 requests

---

[4] It is not clear from the submissions whether plaintiff was represented during the administrative proceedings.  However, the Certificate of Service with respect to the EEOC's "Order Entering Judgment" does not reflect service on a lawyer for plaintiff.  *See* ECF 7-5 at 2.

for production, and 30 requests for admissions. *Id.* Further, TSA was directed to "make employees available for depositions." *Id.*

In the administrative proceedings, TSA moved for summary judgment on March 21, 2018, as to plaintiff's claims of race and age discrimination, and plaintiff opposed the motion. ECF 7-5 at 5. Pursuant to 29 C.F.R. § 1614.109(g), the AJ issued a "Decision" (ECF 7-5), without a hearing, on February 28, 2019, granting TSA's summary judgment motion. The ALJ concluded that Ms. Ryan "failed to set forth the intentional discrimination required to make a finding of discrimination in this case" and therefore she "failed to establish, by a preponderance of the evidence, that she was discriminated against based on her race/color, age and/or reprisal for prior EEO activity." *Id.* at 10; *see also* ECF 7-5 at 1-4 ("Order Entering Judgment").

Plaintiff appealed the AJ's ruling to the DHS Office for Civil Rights and Civil Liberties ("CRCL"). ECF 7-5 at 12. The CRCL issued a Final Order on March 27, 2019, "fully implement[ing] the AJ's decision." *Id.* at 15.

This suit followed on July 3, 2019. ECF 1.

## II.    Standard of Review

As noted, defendant's Motion is styled as a "Motion to Dismiss Or, In the Alternative, For Summary Judgment." ECF 7. A motion styled in the alternative implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for

summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[5]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2018). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.*

Summary judgment ordinarily is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597,

---

[5] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

606 (4th Cir. 2015). As the Fourth Circuit has said, when a district judge rules on a summary judgment motion prior to discovery, it is akin to "for[cing] the non-moving party into a fencing match without a sword or mask." *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014); *accord Putney v. Likin*, 656 F. App'x 632, 639 (4th Cir. 2016) (per curiam).

However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"To justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub. nom. Gardner v. Ally Fin., Inc.*, 514 F. App'x 378 (4th Cir. 2013) (per curiam). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874 (4th Cir. 2019); *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014); *Amirmokri v. Abraham*, 437 F.

Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008) (per curiam), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

In her Opposition, Ms. Ryan does not contest defendant's arguments in favor of summary judgment. Rather, she addresses the defense arguments head on, asserting that there are numerous genuine disputes of material fact. *See* ECF 10-2 at 2, 8-11, 20. Nor has plaintiff challenged the defense exhibits to the Motion. And, she has submitted several exhibits of her own. ECF 7-2 to ECF 7-6.

Moreover, the record is well developed, in light of the administrative process before the EEOC that preceded the litigation, which included the opportunity for discovery. ECF 13-3 at 2 (AJ's Discovery Order). As noted, the AJ's discovery order provided that each party was permitted to propound interrogatories, requests for production of documents, and requests for admissions. ECF 13-1 at 4-5. And, the AJ required TSA to make government employees available for depositions. *See id.* at 4; *cf. McCray*, 741 F.3d at 484 (holding that district court should have allowed the plaintiff, who alleged racial discrimination, to depose her supervisors before resolving defendants' motion for summary judgment). Thereafter, plaintiff served written discovery requests and TSA provided substantive responses. ECF 13-2 at 20-21.

On the other hand, plaintiff argues that defendant makes contentions that she cannot rebut "without the opportunity to engage in discovery[.]" ECF 10-2 at 2. Specifically, she contends that discovery is necessary to "attack the veracity of Defendant's contention that the selectees for both positions 'had clean disciplinary records.'" *Id.* at 9. And, she has submitted an Affidavit (ECF 10-3), in which she avers that she needs discovery to challenge defendant's contention that the selectees had no disciplinary record, and to support her claim that she was passed over for a promotion because of her disciplinary record. *Id.* ¶¶ 3-4. Further, she argues that discovery is necessary to challenge defendant's position that performance evaluations played a role in promotion decisions. *Id.* ¶ 5.

I am not entirely persuaded that additional discovery is necessary. Nevertheless, in light of plaintiff's Affidavit (ECF 10-3), I will consider defendant's Motion under Fed. R. Civ. P. 12(b)(6), without converting it to a summary judgment motion under Rule 56. *See McCray*, 741 F.3d at 484 (noting that prior to discovery plaintiff "had no information on how positions were chosen for

termination or why other positions were kept" and that "[w]ithout such information, it would be impossible for her to make an argument that she was fired because of discriminatory reasons").

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014)

(per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief.  *Iqbal*, 556 U.S. at 678.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  However, "a court is not required to accept legal conclusions drawn from the facts."  *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy

sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243).  But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)."  *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009).  Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'"  *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'"  *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]"  *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, ___ U.S. ___, 135 S. Ct. 2218 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for

summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal

rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) ) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

As noted, the Motion is supported by five exhibits. ECF 7-2 is a letter dated August 3, 2016, informing plaintiff that TSA had completed its investigation and informing her of her right to request a hearing before an EEOC AJ. ECF 7-3 contains excerpts of the ROI. ECF 7-4 is the AJ's Discovery Order. ECF 7-5 is the AJ's Order and Decision and the CLCR's Final Order. And, ECF 7-6 contains emails and statements pertaining to the Letter of Reprimand. Further, the Opposition is supported by five exhibits. These include portions of the ROI (ECF 10-2), two Affidavits filed by plaintiff (ECF 10-3; ECF 10-4), a single-sentence statement signed by Nathan Wesley and dated February 6, 2015 (ECF 10-5), and an email from Ms. Ryan to Mr. Ricketts dated March 3, 2015. ECF 10-6. Finally, two exhibits are appended to the Reply: the AJ's Discovery

Order (ECF 13-1) and TSA's responses to plaintiff's interrogatories, which were propounded by plaintiff to defendant during discovery. ECF 13-2.

The materials pertaining to plaintiff's pursuit of administrative remedies are referenced in and are integral to the Complaint. Moreover, plaintiff has not contested the materiality or the authenticity of defendant's exhibits. The email from plaintiff to Mr. Ricketts is likewise integral to the Complaint because it bears on whether plaintiff has properly exhausted her administrative remedies. Accordingly, I may consider these documents in analyzing various contentions presented by the parties, without converting defendant's motion to one for summary judgment. In contrast, plaintiff's Affidavits and the signed statement by Mr. Wesley are not referenced in the Complaint, are not integral to the Complaint, and are not publicly available documents. Therefore, in resolving the Motion, I shall not consider ECF 10-3, 10-4, and 10-5.

### III.    Discussion

Defendant contends that plaintiff's suit is limited to her non-selection for the SBDO and LBDO positions, because she failed to timely exhaust her administrative remedies as to the June 2014 denial of transfer request and the Letter of Reprimand. ECF 7-1 at 9-11. Further, TSA argues that plaintiff fails to allege plausible failure-to-hire claims based on race or age. *Id.* at 13. According to defendant, plaintiff's "comparator evidence negates, not supports, a claim of discrimination." *Id.* at 13. Moreover, defendant maintains that there are no allegations that Mr. Marzola, a 60-year-old Caucasian, acted with discriminatory animus. *Id.* at 14. Similarly, TSA asserts that the Complaint is devoid of allegations that support a claim of retaliation. *See id.* at 15-17.

Plaintiff counters that she exhausted her administrative remedies with respect to the Letter of Reprimand. ECF 10-1 at 12. And, Ms. Ryan argues that she has stated plausible race and age

discrimination claims for failure to hire because she was superior to the applicants who were selected, several of the selectees were younger than she is, and all four of the LBDO selectees were non-Caucasian. *Id.* at 17. The Complaint also alleges viable retaliation claims, plaintiff posits, because she was passed over for the SBDO and LBDO positions shortly after engaging in protected activities. *Id.* at 18-19.

## A. Title VII Generally

Relying on Title VII, plaintiff claims that the TSA discriminated against her on the basis of race and retaliated against her for engaging in protected activities. ECF 1.

Title VII prohibits an employer, *inter alia*, from discriminating against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. The phrase "terms, conditions or privileges of employment" is "an expansive concept." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) (quotation marks and citation omitted). Title VII also bars retaliation based on an employee's opposition to conduct made unlawful by Title VII, or for participation in a Title VII investigation or proceeding. 42 U.S.C. § 2000e-3; *see e.g.*, *Evans v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019); *Ray v. Int'l Paper Co.*, 909 F.3d 661, 666 (4th Cir. 2018); *Netter v. Barnes*, 908 F.3d 932, 937 (4th Cir. 2018); *Strothers v. City of Laurel*, 895 F. 3d 317, 326-27 (4th Cir. 2018); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc); *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014).

Title VII's prohibitions apply to private sector employees as well as federal employees. *Nielsen v. Hagel*, 666 F. App'x 225, 227 (4th Cir. 2016) (citing 42 U.S.C. § 2000e-16(a)).[6] Before filing suit under Title VII, however, a plaintiff must exhaust administrative remedies. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 181 (1989) (private sector employees), *superseded on other grounds by* 42 U.S.C. § 1981(b); *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976) (federal employees); *see also McCray*, 662 F. App'x at 224. Notably, "[t]he administrative remedies available for federal employees are significantly broader" than those available to employees in the private sector. *Laber v. Harvey*, 438 F.3d 404, 416 (4th Cir. 2006) (en banc); *see* 42 U.S.C. § 2000e-16(c) (setting forth the conditions under which a federal employee may initiate a civil suit under Title VII). However, exhaustion under Title VII is not jurisdictional; it is instead a "claim-processing rule[] that must be timely raised to come into play." *Fort Bend Cty. v. Davis*, ___ U.S. ___, 139 S. Ct. 1843, 1846, 1850 (2019).

In general, *at trial* a plaintiff "may establish a discrimination claim under Title VII through two avenues of proof." *Thomas v. Delmarva Power & Light Co.*, 715 F. App'x 301, 302 (4th Cir. 2018) (per curiam) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)). The plaintiff's first avenue is to offer "'direct or indirect'" evidence of discrimination under "'ordinary principles of proof.'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997). The plaintiff's second

---

[6] Title VII initially did not protect federal employees. *See* 42 U.S.C. § 2000e(b) (excluding the United States from the definition of "employer"). In 1972, however, Congress amended Title VII to provide that a federal employee who has exhausted her administrative remedies "may file a civil action as provided in section 2000e-5 of this title" against the "head of the department, agency, or unit, as appropriate." 42 U.S.C. § 2000e-16(c); *see Bullock v. Napolitano*, 666 F.3d 281, 283-84 (4th Cir. 2012), *cert. denied*, 568 U.S. 882 (2012).

avenue is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Young v. United Parcel Serv., Inc.*, 569 U.S. 206, 228-29 (2015) (construing the Pregnancy Discrimination Act); *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (discussing the *McDonnell Douglas* framework).

As indicated, the avenues of proof pertain to trial. At this juncture, reference to these methodologies merely serves to inform a court's evaluation of a motion to dismiss or for summary judgment. *See Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019) (recognizing that "a Title VII plaintiff may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas Corp.* . . ."); *Pettis v. Nottoway Cty. Sch. Bd.*, 592 F. App'x 158, 160 (4th Cir. 2014) (same).

The *McDonnell Douglas* proof scheme is "a procedural device, designed only to establish an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted). Notably, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). Under the *McDonnell Douglas* approach, the "'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see also Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 726 (4th Cir. 2019); *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011).

If the plaintiff chooses to proceed *at trial* under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination." *Merritt v. Old Dominion*

*Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Abilt v. Cent. Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017). Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, the plaintiff is generally required to show that the employer took adverse action against an applicant "under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253.

To state a prima facie claim of racial discrimination under *McDonnell Douglas*, the plaintiff must allege "'(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'" *Goode v. Cent. Va. Legal Aid Soc.*, *Inc.*, 807 F.3d 619, 626 (4th Cir. 2015) (quoting *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012)); *see also Matias v. Elon Univ.*, 780 F. App'x 28, 31 (4th Cir. 2019); *Rayyan v. Va. Dep't of Transp.*, 719 F. App'x 198, 203 (4th Cir. 2018).

If a plaintiff establishes a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle*, 650 F.3d at 336; *see Reeves*, 530 U.S. at 142; *Hurst v. District of Columbia*, 681 F. App'x 186, 189-90 (4th Cir. 2017) (per curiam). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11. The plaintiff must then prove, by a preponderance of evidence, "that the [employer's] proffered reason was not the true reason for the employment decision" and that the plaintiff "has been the victim of intentional

discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516-20; *Adams v. Trs. of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original).

Conversely, if the defendant does not submit evidence of a legitimate basis for its actions, the factfinder may "infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978). And, if the defendant fails to meet the burden of producing "evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr.*, 509 U.S. at 509 (emphasis in original). This is because a legal presumption of intentional discrimination has been established. *Id.* at 510 n.3; *see Burdine*, 450 U.S. at 255 n.8 ("[T]he allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.").

As indicated, these two approaches establish the common methods by which a plaintiff may prove intentional employment discrimination *at trial*. *See Burns*, 96 F.3d at 731. At the motion to dismiss stage, however, a plaintiff need not establish a prima facie case of discrimination under *McDonell Douglas*. In *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Supreme Court explained that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." The Court observed that it had "never indicated that the

requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511. Thus, the Court said: "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ." *Id.* at 515; *see also McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584 (4th Cir. 2015), *cert. denied*, ___ U.S. ___, 136 S. Ct. 1162 (2016).

However, as the Second Circuit has noted, the Supreme Court's holding in *Swierkiewicz* is arguably in tension with the Court's subsequent rulings in *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). On the one hand, "[r]eading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent." *Id*. at 309. On the other hand, in *Twombly*, the Court said that a plaintiff must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And, in *Iqbal*, the Court clarified that the heightened pleading standard of Twombly is applicable in "'all civil actions' . . . ." *Iqbal*, 556 U.S. at 684.

In *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017), the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies[.]" Thus, the question at the motion to dismiss stage is whether the plaintiff has stated "a plausible claim for relief under Title VII . . . ." *Ciociola v. Balt. City Bd. of Sch. Comm'rs*, CCB-15-1451, 2016 WL 125597, at *4 (D. Md. Jan. 12, 2016).

## B.  The ADEA

The ADEA "'broadly prohibits arbitrary discrimination in the workplace based on age.'" *Trans World Airlines, Inc*., 469 U.S. at 120 (quoting *Lorillard v. Pons*, 434 U.S. 575, 577 (1978)); *see also McKennon v. Nashville Banner Pub. Co*., 513 U.S. 352, 357 (1995). It applies to

individuals 40 years of age or older. *See* 29 U.S.C. § 631(a); *Bodkin v. Town of Strasburg*, 386 F. App'x 411, 413-14 (4th Cir. 2010) (per curiam).

Like Title VII, the ADEA applies to both employees in the private sector and to federal employees. *Laber*, 438 F.3d at 430; *see Baqir v. Principi*, 434 F.3d 733, 744 (4th Cir. 2006). And, as with Title VII, the ADEA is subject to certain exhaustion requirements. *See Webb v. Potomac Elec. Power Co.*, TDC-18-3303, 2020 WL 1083402, at *4 (D. Md. Mar. 6, 2020) (considering the exhaustion requirements of both Title VII and the ADEA under Rule 12(b)(6)); *Johnson v. Silver Diner, Inc.*, PWG-18-3021, 2019 WL 3717784, at *2 (D. Md. Aug. 7, 2019) (same).

The federal-sector provision of the ADEA, codified at 29 U.S.C. § 633a, bars age discrimination against federal employees. It provides that "[a]ll personnel actions" involving federal employees "who are at least 40 years of age . . . shall be made free from any discrimination based on age." *Id.* § 633a(a). Further, § 633a authorizes "[a]ny person aggrieved" to "bring a civil action" for "such legal or equitable relief as will effectuate the purposes" of the ADEA. *Id.* § 633a(c).

A plaintiff may establish claims of discrimination and retaliation under the ADEA using the *McDonell Douglas* burden-shifting framework, outlined earlier. *See Reeves*, 530 U.S. at 142 (applying *McDonell Douglas* to ADEA claim); *Dufau v. Price*, 703 F. Appx 164, 166 (4th Cir. 2017) (per curiam); *Bodkin*, 386 F. App'x at 413; *Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir. 2004). To prove a prima facie case, the plaintiff must establish that "(1) [s]he is a member of a protected class—that is, 40 years or older; (2) [s]he suffered an adverse employment action; (3) [s]he was performing [her] job duties at a level that met [her] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or [s]he was

replaced by a substantially younger person." *Bodkin*, 386 F. App'x at 413-14 (citations omitted) (some alterations in *Bodkin*).

Of course, to survive a motion to dismiss, a plaintiff "need not need not 'plead facts sufficient to establish a prima facie case of [age] discrimination,' but need only plausibly allege a statutory claim." *Boney v. Trs. of Cape Fear Cmty. Coll.*, 366 F. Supp. 3d 756, 763 (E.D.N.C. 2019) (alteration in *Boney*) (quoting *Woods*, 855 F.3d at 648). At this stage, a plaintiff "must only plausibly allege that she is a member of the ADEA's protected group, that she suffered an adverse employment action, and that her employer took that action against her because of her age." *Boney*, 366 F. Supp. at 762-63.

To prevail under the ADEA, at least with respect to private employers, the plaintiff "must prove, by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177-78 (2009). It is not enough that age was "merely a motivating factor of the challenged adverse employment action . . . ." *Hartman v. Univ. of Md. at Balt.*, 595 F. App'x 179, 181 (4th Cir. 2014) (per curiam); *see Thuy-Ai Nguyen v. Mnuchin*, PX-18-492, 2019 WL 2270690, at *7 (D. Md. May 28, 2019). Thus, "[a]n employer's reliance on factors that are analytically distinct from age in reaching the adverse decision rules out age as its but-for cause." *Bennett v. Kaiser Permanente*, 931 F. Supp. 2d 697, 705 (D. Md. 2013).[7]

_____

[7] On June 28, 2019, the Supreme Court granted certiorari to decide whether the federal-section provision of the ADEA requires the plaintiff to prove that age served as the but-for cause of the challenge personnel action. *See Babb v. Wilkie*, 743 F. App'x 280 (11th Cir. 2018), *cert. granted* No. 18-882 (June 28, 2019). To my knowledge, the Fourth Circuit has not chosen sides in the circuit split.

### C. Exhaustion

#### 1. Title VII

Federal employees must exhaust their administrative remedies before filing Title VII claims in federal court. 42 U.S.C. § 2000e-16(c); *see Stewart v. Iancu*, 912 F.3d 693, 699 (4th Cir. 2019); *Nielsen*, 666 F. App'x at 227; *Young v. Nat'l Ctr. for Health Serv. Research*, 828 F.2d 235, 237 (4th Cir. 1987). The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, it advances the "twin objectives" of "protecting agency authority in the administrative process and promoting efficiency in the resolution of claims." *Stewart*, 912 F.3d at 699 (internal quotation marks, alterations, and citation omitted).

To start, the employee "must initiate contact with [an EEO] Counselor [in the employee's federal agency] prior to filing [an agency EEO] complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a); *see also Nielsen*, 666 F. App'x at 227. And, the employee "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1); *see also Nielsen*, 666 F. App'x at 227; *Verrier v. Sebelius*, CCB-09-402, 2010 WL 1222740, at *8 (D. Md. Mar. 23, 2010).

The EEO Counselor must "conduct an initial counseling session, during which the counselor must inform the aggrieved party in writing of his rights and responsibilities, and offer the employee the option of pursuing alternative dispute resolution (ADR)." *Nielsen*, 666 F. App'x at 227 (citing 29 C.F.R. §§ 1614.105(b)(1), (2)). Counseling may lead to the withdrawal of the claim or a settlement agreement between the employee and the employer. *See* 29 C.F.R. § 1614.504(a); *Campbell v. Geren*, 353 F. App'x 879, 882 (4th Cir. 2009). If the employee chooses to pursue ADR, the EEO Counselor must conduct a "final interview" within 90 days of the initial

interview. 29 C.F.R. §§ 1614.105(d), (f). At the end of the 90-day period, if the matter is not resolved, "the counselor must issue a written notice of right to file a formal complaint within the agency." *Nielson*, 666 F. App'x at 227 (citing 29 C.F.R. § 1614.105(d)-(f)). Thereafter, the aggrieved party must file a formal complaint with the agency within 15 days of receipt of notice from the agency. *See* 29 C.F.R. §§ 1614.105(d), 1614.106(b).

Once the agency takes "final action" with regard to the formal complaint, the aggrieved party may appeal the decision to the EEOC or, within 90 days, file a civil action. *See* 42 U.S.C. § 2000e-16; 29 C.F.R. §§ 1614.110, 1614.401, 1614.407(a); *see also Nielsen*, 666 F. App'x at 228. If an employee appeals to the EEOC, the Office of Federal Operations ("OFO") "reviews the record, supplements it if necessary, and then issues a written decision." *Scott v. Johanns*, 409 F.3d 466, 468 (D.C. Cir. 2005) (citing 29 C.F.R. § 1614.404-05). A decision by the OFO is considered to be final, "triggering the right to sue" in court. *Scott*, 409 F.3d at 468 (citing 29 C.F.R. § 1614.405(b)). The employee must initiate the civil lawsuit "[w]ithin 90 days of receipt of the Commission's final decision on an appeal." 29 C.F.R. §§ 1614.407(a), (c). If the agency fails to issue a final decision within 180 days of receipt of the formal complaint, or if the EEOC fails to rule within 180 days of the filing, the aggrieved party may sue. 29 C.F.R. §§ 1615.407(b), (d).

As noted, the Supreme Court recently held that Title VII's administrative exhaustion requirements are not jurisdictional. *Davis*, 139 S. Ct. at 1846. Therefore, a plaintiff's failure to exhaust his administrative remedies before filing suit does not itself prevent the court from hearing the case. However, exhaustion is a "claim-processing rule," and it is "'mandatory' in the sense that a court must enforce the rule if a party 'properly raises it.'" *Id.* (cleaned up) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)). Thus, while a defendant may waive arguments related to administrative exhaustion, if asserted in a timely fashion such objections may

warrant dismissal under Rule 12(b)(6). *See Stewart*, 912 F.3d at 701-02 (holding that Title VII's mandatory 180-day waiting period requirement is a mandatory claim-processing rule and further considering whether dismissal was appropriate under Rule 12(b)(6) for plaintiff's alleged failure to adhere to the rule); *Kenion v. Skanska USA Bldg., Inc*., RBD-18-3344, 2019 WL 4393296, at *4 (D. Md. Sept. 13, 2019) (discussing the import of *Davis*).

Title VII's limitations period is subject to equitable tolling. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990) (holding that Title VII's then-30-day time limit to bring suit in court after receiving a right-to-sue letter was subject to equitable tolling). However, equitable tolling should be used "sparingly" and does not apply to "what is at best a garden variety claim of excusable neglect." *Id.* at 96. Rather, it applies only where a plaintiff can show that she "pursued [her] rights diligently and extraordinary circumstances prevented [her] from filing on time." *Raplee v. United States*, 842 F.3d 328, 333 (4th Cir. 2016)); *see Moret v. Geren*, 494 F. Supp. 2d 329, 339 (D. Md. 2007 (equitable tolling of the Title VII limitations period was inappropriate where the plaintiff simply "failed to seek out an EEO counselor in a timely manner").

### 2. The ADEA

Pursuant to 29 U.S.C. § 633a, "the ADEA provides two alternative routes for pursuing a claim of age discrimination." *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5 (1991). First, "[a]n individual may invoke the EEOC's administrative process and then file a civil action in federal district court if [s]he is not satisfied with his administrative remedies." *Id.* at 5-6 (citing 29 U.S.C. § 633a(b) and (c)). This process is the same as the Title VII administrative process, described earlier. *See* 29 C.F.R. § 1614.105(a). Under this alternative, the employee must exhaust her administrative remedies, which includes filing an EEO complaint against the particular agency, before she may file suit in federal court. 29 U.S.C. §§ 633a(b)-(c).

Second, a federal employee complaining of age discrimination "can decide to present the merits of his claim to a federal court in the first instance." *Stevens*, 500 U.S. at 6 (citing 29 U.S.C § 633a(d)). In other words, "[a] federal employee complaining of age discrimination . . . does not have to seek relief from his employing agency or the EEOC at all." *Stevens*, 500 U.S. at 6; *see also Verrier*, 2010 WL 1222740 at *8. This process, governed by 29 U.S.C. § 633a, is sometimes referred to as the administrative "bypass" option. *See e.g.*, *Forester v. Chertoff*, 500 F.3d 920, 924 (9th Cir. 2007). With respect to the "bypass," an aggrieved individual must provide written notice of the intent to file suit to the EEOC at least 30 days before filing suit. 29 U.S.C. § 633a(d). And, a plaintiff may only give notice of intent to sue to the EEOC for events that occurred within the preceding 180 days. *Id.*

### 3. Analysis

The parties agree that plaintiff has properly exhausted her administrative remedies as to TSA's failure to select her for the SBDO and LBDO positions. ECF 7-1 at 10 ("Defendant does not dispute that plaintiff has properly exhausted her administrative claims with request to her non-selection claims."). And, they agree that Mr. Wood's denial of plaintiff's transfer request in July 2014 is merely a "background" allegation. ECF 10-1 at 4 n.4. But, the parties hotly dispute whether plaintiff exhausted her Title VII administrative remedies as to the Letter of Reprimand, such that it can serve as the basis of her race and age discrimination claims. ECF 7-1 at 11 n.5; ECF 10-1 at 12-13; ECF 13 at 1-3.

According to defendant, plaintiff failed to exhaust her administrative remedies in connection with the LOR because it was issued on January 29, 2015, and plaintiff did not initiate contact with an EEO Counselor until April 27, 2015, well outside the 45-day window. ECF 7-1 at 11 n.5; ECF 13 at 2. Plaintiff's untimely filing should not be excused, TSA contends, because her

email to Mr. Ricketts, in the TSA Civil Rights Division, reflected her knowledge of the limitations period, and there is no basis for equitable tolling. ECF 13 at 2.

In response, plaintiff maintains that she timely exhausted her administrative remedies because she emailed Mr. Ricketts on March 13, 2015, which was 43 days after the LOR was issued. ECF 10-1 at 13. Further, plaintiff asserts that TSA is estopped from arguing that her exhaustion as to the LOR was untimely "because Plaintiff rightfully relied on Defendant's conduct—them giving her the Intake Sheet for completion and filing." *Id.*

I am satisfied that, under the circumstances attendant here, plaintiff's email to Mr. Ricketts satisfied Title VII's requirement that a federal employee "initiate contact with a Counselor" within 45 days of the alleged discrimination. 29 C.F.R. § 1614.105(a). Therefore, I conclude that plaintiff has exhausted her administrative remedies with respect to the Letter of Reprimand.

To be sure, the Complaint alleges that plaintiff initiated contact with an EEO Counselor on April 27, 2015. ECF 1, at ¶ 9. However, it is well established that an exhibit trumps allegations contained in a complaint where there is a conflict. *See So. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013). Here, the Complaint's allegation concerning contact with an EEO Counselor on April 27, 2015, is not determinative. Plaintiff had emailed Mr. Ricketts on March 13, 2015, "requesting to submit a TSA EEOC claim of LOR dated 1-29-2015 within my 45 days." ECF 10-6.

The Fourth Circuit has not addressed what it means to "initiate contact" with an EEO Counselor. Therefore, I may look to the EEOC's regulations. *See Auer v. Robbins*, 519 U.S. 452, 461, (1997) (holding that an agency's interpretation of its own regulation is "controlling unless 'plainly erroneous or inconsistent with the regulation'") (citation omitted); *accord Kisor v. Wilkie*, ___ U.S. ___, 139 S. Ct. 2400, 2411 (2019). Section 1614.105(a) of 29 C.F.R. does not define

what it means to "initiate contact," but the EEOC "consistently has held that a person may satisfy the criterion of EEO Counselor contact by initiating contact with any agency official logically connected with the EEO process, even if that official is not an EEO Counselor, and by exhibiting an intent to begin the EEO process." EEOC Management Directive 110, Chapter 2, § I.A n.2. Other courts have adopted the EEOC's interpretation of its regulation. *See Culpepper v. Schafer*, 548 F.3d 1119, 1121 (8th Cir. 2008); *Johnson v. Cohen*, 6 F. App'x 308, 311 (6th Cir.2001) (per curiam); *Nygren v. Ashcroft,* 109 F. App'x 816, 819 (8th Cir. 2004) (per curiam); *Welsh v. Hegler*, 83 F. Supp. 3d 212, 218 (D.D.C. 2015); *Koch v. Walter*, 935 F. Supp. 2d 143, 151 (D.D.C. 2013); *Johnson v. Glickman*, 155 F. Supp. 2d 1240, 1247-48 (D. Kan. 2001). Those courts ask whether the employee "(1) contacted an agency official logically connected with the EEO process and (2) exhibited an intent to begin the EEO process when [s]he sent complaints regarding the alleged incidents." *Hegler*, 83 F. Supp. 3d at 218.

Here, plaintiff timely emailed Mr. Ricketts, an officer with the TSA Office of Civil Rights, and she clearly identified the alleged incident—the Letter of Reprimand. Moreover, by referencing "my 45 days," plaintiff certainly conveyed her intent to initiate the EEO process within the time allowed by law. ECF 10-6. Thus, plaintiff initiated contact with an EEO Counselor within 45 days of the LOR. It follows that plaintiff exhausted her Title VII administrative remedies as to the LOR. *See Culpepper*, 548 F.3d at 1123-24 (concluding that letter to director of agency's office of civil rights that demonstrated awareness of EEO process satisfied the EEOC's interpretation of 29 C.F.R. § 1614.105(a)).

Neither party addresses whether plaintiff timely exhausted her administrative remedies under the ADEA as to the LOR. However, because plaintiff satisfied the exhaustion requirements

of Title VII, I shall assume that she also satisfied the ADEA's exhaustion requirements. *See Stevens*, 500 U.S. at 5.

## D. Disparate Treatment (Counts I and II)

In Count I, plaintiff lodges a claim for race discrimination, in violation of Title VII. *See* ECF 1, ¶¶ 59-67. Plaintiff alleges in Count II that her age was the but-for cause of her discriminatory treatment. *Id.* ¶¶ 77-85. TSA has moved to dismiss Counts I and II, asserting that the Complaint lacks allegations to support the reasonable inference that its employment decisions were motivated by racial or age-based animus. ECF 7-1 at 13-15.

To start, the Complaint does not state a claim for race or age discrimination on the basis of the Letter of Reprimand. To be sure, an employer that metes out punishment in a discriminatory fashion runs afoul of Title VII. *See Ricci v. DeStefano,* 557 U.S. 557, 577 (2009) (stating that disparate treatment occurs when an employer treats an employee "'less favorably than others because of' a protected trait") (citation omitted); *Sook Yon v. Sebilias*, 481 F. App'x 848, 850 (4th Cir. 2012) (applying *McDonell Douglas* framework to a claim for "discriminatory discipline"); *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993). And, a written reprimand can sometimes qualify as an "adverse employment action," *i.e.*, an action that "'adversely affects the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (citation omitted). This occurs when the reprimand is accompanied by collateral consequences, such as the possibility of termination, a reduction in pay, or the denial of a promotion. *See Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807 818-21 (E.D. Va. 2016) (canvassing Title VII case law in the Fourth Circuit concerning reprimands); *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 330 (D. Md. 2003) ("A reprimand, whether oral or written, does not *per se* significantly affect the terms or conditions of employment.").

33

In this case, however, the Complaint does not allege that Ms. Ryan's Letter of Reprimand affected the terms or conditions of her employment. The Complaint references the LOR only twice: first, that Mr. Wood issued the LOR to plaintiff and second that she complained about it to Mr. Wood, but he did nothing. ECF 1, ¶¶ 35, 39. Because the Complaint does not describe the effect of the Letter of Reprimand, it is merely speculative whether the LOR itself qualifies as an adverse employment action. *See Hispanic Nat'l Law Enf't Assoc. NCR v. Prince George's Cty*., TDC-18-3821, 2019 WL 2929025, at *15 (D. Md. July 8, 2019) (dismissing Title VII discriminatory discipline claim where complaint failed to allege how a reprimand negatively impacted plaintiff's employment conditions); *Boney*, 366 F. Supp. 3d at 763-64 (dismissing ADEA claim predicated on reprimand because plaintiff failed to allege facts that amounted to an adverse employment action).

Plaintiff tries to cure these defects in her Opposition, averring that her discipline affected the terms and conditions of her employment because it "proximately caused the Defendant's decision to not select Plaintiff for the vacation position . . . ." ECF 10-1 at 15. But, "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (citation omitted); *see, e.g.*, *Glenn v. Wells Fargo Bank, N.A.*, DKC-15-3058, 2016 WL 3570274 at *3 (D. Md. July 1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss). Thus, given the paucity of allegations concerning the Letter of Reprimand in the Complaint, it does not give rise to a plausible violation of Title VII or the ADEA.

In any event, the Complaint's allegations concerning plaintiff's non-selection for the SBDO and LBDO positions fall short for a different reason: Ms. Ryan fails to allege facts that provide even minimal support to infer that TSA was motivated by discriminatory intent. As noted,

although a complaint need not plead facts sufficient to establish a prima facie case of discrimination, it must allege facts to support a plausible inference of disparate treatment. *Woods*, 855 F.3d at 648; *McCleary-Evans*, 780 F.3d at 585-88. To be sure, a plaintiff is "not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010), *cert. denied*, 562 U.S. 1219 (2011); *see Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545-46 (4th Cir. 2003). But, "[w]here a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination," the plaintiff must demonstrate that the comparator is similarly situated in all relevant respects. *Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017); *see Irani v. Palmetto Health*, 767 F. App'x 399, 420 (4th Cir. 2019) (per curiam); *Haywood*, 387 F. App'x at 359; *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008).

Plaintiff seeks to assert claims of disparate treatment. Therefore, she must allege facts showing that she is "similar in all relevant respects to [her] comparator," including "that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haywood*, 387 F. Appx at 359 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)); *see Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 n.10 (D. Md. 2013), *aff'd*, 576 F. App'x 199 (4th Cir. 2014).

Of course, the comparison "'will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same set of circumstances.'" *Haynes*, 922 F.3d at 223-24 (citation omitted); *see Irani*, 767 F. App'x at 420. Nevertheless, "[i]f

a plaintiff wishes to prove that a defendant's legitimate, non-discriminatory explanation is pretext by pointing to other employees who were treated differently, '[t]he similarity between comparators . . . must be clearly established in order to be meaningful.'" *Swaso*, 698 F. App'x at 748 (citation omitted); *see, e.g.*, *Lightner*, 545 F.3d at 265 (rejecting comparison evidence as "too loose" because plaintiff and comparator held different job positions). Thus, a complaint's conclusory assertions that the plaintiff and a co-worker are on equal footing is insufficient to nudge a discrimination claim across the line from conceivable to plausible. *See Swaso*, 698 F. App'x at 748; *Sanchez v. Whole Foods Mkt.*, GJH-18-3106, 2019 WL 3717771, at *4 (D. Md. Aug. 5, 2019); *Bowen v. Md. Dept. of Pub. Safety & Corr. Servs.*, RBD-17-1571, 2018 WL 1784463, at *10 (D. Md. Apr. 12, 2018).

Plaintiff relies on comparator evidence in claiming that her non-selection for the SBDO and LBDO positions stems from race and age discrimination. Starting with the SBDO position, the Complaint alleges that instead of plaintiff, TSA selected Torrance, Carmouche, Hetzler, Cobb, and Chambers. ECF 1, ¶ 38. But, the Complaint fails to allege that plaintiff is comparable to these individuals, let alone provide any specificity as to her comparator's work histories, qualifications, or responsibilities. Most notably, although the Complaint acknowledges that plaintiff was disciplined a month before applying to the SBDO position, the Complaint is silent as to whether any of the applicants who were selected had disciplinary records. *See Irani*, 767 F. App'x at 420 (plaintiff's comparators were not sufficiently similar because they did not have comparable disciplinary histories). Absent allegations that plaintiff and the selectees are similarly situated in all relevant respects, only speculation can "fill the gaps in her complaint." *McCleary-Evans*, 780 F.3d at 587.

Even assuming, *arguendo*, that comparing plaintiff to the individuals selected for SBDO

positions is an apples-to-apples comparison, the Complaint nonetheless fails to allege plausible discrimination claims. Of the five selectees, two are Caucasian and two were over forty. In other words, several of the individuals selected by TSA for the SBDO positions are within plaintiff's protected class. Thus, it is simply not plausible to infer that TSA's hiring decisions with respect to the SBDO position were driven by impermissible animus. *See Booth v. Maryland*, 327 F.3d 377, 383 (4th Cir. 2003) (stating that it is "not possible to infer that any disparate discipline against Booth was motivated by racial discrimination because Booth's evidence demonstrated that both white and African–American employees were treated differently than Booth") (quotation marks and citation omitted); *see also Delos Santos v. Potter*, 371 F. App'x 746, 748 (9th Cir. 2010) (denying disparate treatment claim under ADEA and Title VII because plaintiff's comparators were members of the same protected class as plaintiff); *Floyd v. U.S. Dep't of Homeland Sec.*, RDB-09-0735, 2009 WL 3614830 (D. Md. Oct. 27, 2009) ("A plaintiff cannot establish a claim of disparate treatment by referencing a comparator of the same protected class.").

Plaintiff's allegations regarding the LBDO position are also plagued by deficiencies. Again, the Complaint fails to allege facts to show that she was comparable to applicants selected by TSA for the LBDO position. Indeed, the comparator allegations tend to negate plaintiff's ADEA claim, as the Complaint alleges that two of the four selectees were over the age of forty. *See* ECF 1, ¶ 44 (alleging that Little and Gilbert were born in 1962 and 1960, respectively). Although plaintiff claims that all four of the LBDO selectees were non-Caucasian, *see id.*, the Complaint is devoid of allegations that Mr. Marzola, the selecting officer, harbored animus towards plaintiff because of her race. In this regard, the fact that Mr. Marzola is Caucasian would render it unlikely that he was motivated by such animus. *See, e.g.*, *Coggins v. Gov't of District of Columbia*, 173 F.3d 424, 1999 WL 94655, at *4 (4th Cir. 1999) (table opinion) ("The fact that

both Krull and Gibbons, first and third in [Plaintiff's] chain-of-command, are both Caucasian makes any anti-Caucasian bias unlikely."); *James v. Verizon*, 792 F. Supp. 2d 861, 869-870 (D. Md. 2011) ("'[p]roof that the decision-maker is a member of the same protected class as [plaintiff] weakens any possible inference of discrimination'") (alteration in original) (citation omitted). Thus, plaintiff's non-selection for the LBDO position does not support a plausible claim of race or age discrimination.

Accordingly, because plaintiff's race and age discrimination claims fail as a matter of law, I shall grant the Motion as to Counts I and II, without prejudice.

### E. Retaliation (Counts III and IV)

Plaintiff alleges in Counts III and IV that she was denied the SBDO and LBDO positions in retaliation for engaging in protected activities, in violation of Title VII and the ADEA, respectively. ECF 1 at 12-16.

Courts evaluate Title VII and ADEA retaliation claims under the same three-step burden-shifting analysis set out in *McDonnell Douglas*. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192-93 (3d Cir. 2015) (applying same analysis to retaliation claims lodged under the ADEA and Title VII); *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006) (same). To state a claim of retaliation, a plaintiff must allege "'that (1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action.'" *Okoli v. City of Balt.*, 648 F.3d 216, 223 (4th Cir. 2011) (citation omitted); *see Strothers*, 895 F.3d at 327; *Guessous*, 828 F.3d at 217; *Smyth-Riding v. Sci. Eng'g Servs., LLC*, 699 F. App'x 146, 151 (4th Cir. 2017); *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005).

A plaintiff must first establish that she engaged in protected activity. The Fourth Circuit has explained that, "in the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation." *Navy Fed. Credit Union*, 424 F.3d at 406; *see Netter*, 908 F.3d at 937. "An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin*, 149 F.3d at 259; *see* 42 U.S.C. § 2000e-3(a).

The second element is that of an "adverse action." In *Strothers*, 895 F.3d at 327, the Fourth Circuit explained that an "adverse *employment* action" is not the standard in a retaliation case. (Emphasis added.) In other words, the adverse action "need not be employment or workplace-related in order to sustain a retaliation claim." *Id.*; *see also Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) ("*Burlington Northern*") ("[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."). That said, "retaliatory actions do have to be 'materially adverse'— such that they 'might have dissuaded a reasonable worker' from engaging in protected activity." *Strothers*, 895 F.3d at 327 (quoting *Burlington Northern*, 548 U.S. at 68). In other words, "[t]he anti-retaliation provision of Title VII does not protect against 'petty slights, minor annoyances, and simple lack of good manners.'" *Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 738 (D. Md. 2009) (quoting *Burlington Northern*, 548 U.S. at 68). Nor does "a personal conflict alone . . . constitute retaliation." *Spencer v. Va. State Univ.*, 919 F.3d 199, 208 (4th Cir. 2019).

Of import here, Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington Northern*, 548 U.S. at 67; *see also Ray*, 909 F.3d at 667. The Fourth Circuit has found that "discharge, demotion,

decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion" constitute adverse actions. *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). Reassignment of job function may also constitute an adverse action. *Young v. Montgomery Cty.*, PX-18-2054, 2019 WL 1596992, at *4 (D. Md. Apr. 15, 2019) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761-62 (1998)). But, "[a]bsent evidence that a new position is significantly more stressful than the last, vague allegations of stress resulting from reassignment cannot support a claim of discrimination under Title VII." *Boone*, 178 F.3d at 256. At a minimum, the plaintiff must show that "the reassignment had some significant detrimental effect on" the employee. *Id.*

To establish causation under Title VII, the plaintiff bears the burden of establishing that the alleged retaliation "would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360; *see also Irani*, 767 F. App'x at 421. The plaintiff may proceed either by direct evidence "or by proving that any non-retaliatory justification for the [adverse action] was pretextual." *Netter*, 908 F.3d at 938; *see Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015).

To satisfy the third element—a causal connection between the protected activity and the adverse action—a plaintiff at trial must show that "the employer [took] the adverse employment action *because* the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original). Pursuant to the Supreme Court's ruling in *Nassar*, 570 U.S. at 362, "a plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."

Ordinarily, there must exist "some degree of temporal proximity to suggest a causal connection." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th

Cir. 2005).  Therefore, a "'lengthy time lapse between the [defendant's] becoming aware of the protected activity and the alleged adverse . . . action'" often "'negates any inference that a causal connection exists between the two.'"  *Id.* (citation omitted).  And, "a lapse of as little as two months between the protected activity and an adverse employment action is 'sufficiently long so as to weaken significantly the inference of causation.'"  *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 790 (D. Md. 2013) (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003)).

Nevertheless, mere temporal proximity is not necessarily enough to create a jury issue as to causation.  "'Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.'"  *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) (citation omitted) (affirming summary judgment where the actions that led to plaintiff's termination began before her protected activity).

Applying these principles here, the Complaint fails to state claims for retaliation.  Plaintiff alleges that she engaged in numerous protected activities.  ECF 1 at 12-15. Specifically, Ms. Ryan alleges that she filed EEO complaints between 2007 and 2012, *id.* ¶ 104; emailed Mr. Ricketts on March 13, 2015, *id.* ¶ 105; submitted an EEO Intake Sheet on April 3, 2015, *id.* ¶ 106; initiated contact with an EEO Counselor on April 27, 2015, *id.* ¶ 108; and filed an EEOC Complaint on June 13, 2015.  *Id.* ¶ 109.  As a result, according to plaintiff, she was denied the SBDO position on April 20, 2015, *id.* ¶ 107, and she was denied the LBDO position on October 9, 2015.  *Id.* ¶ 110. Neither job promotion, however, gives rise to a plausible inference of retaliation.

Plaintiff's allegations in connection with her denial of the SBDO position fail because there is no causal connection between plaintiff's protected activities and the adverse action.  Plaintiff's EEO activity between 2007 and 2012 is too far removed from her denial of the SBDO position,

which occurred in March 2015.  *See, e.g*., *Hooven-Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001) ("A six month lag is sufficient to negate any inference of causation."); *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (thirteen months negates causation).  Plaintiff did email Mr. Ricketts just a month before she was denied the SBDO position.  However, there are no allegations that Mr. Marzola was aware of plaintiff's email expressing her intent to file an EEO complaint concerning the Letter of Reprimand.  *See Strothers*, 895 F.3d at 335-67 (observing that although establishing causation at the pleading stage is not "an onerous burden . . . no causal connection can exist between an employee's protected activity and an employer's adverse action if the employer was unaware of the activity").   And, it is not readily apparent that Ms. Ryan's email would have made its way to Mr. Marzola.  Indeed, plaintiff did not formally contact an EEO Counselor until seven days *after* she was passed over for the SBDO job.

In sum, because the Complaint does not adequately allege that Mr. Marzola knew of plaintiff's protected activity.  Therefore, plaintiff has not stated a retaliation claim for the denial of the SBDO job.  *See CavaMezze Grill, LLC*, 858 F.3d 896, 901 (4th Cir. 2017) ("If an employer . . . never realized that its employee engaged in protected conduct, it stands to reason that the employer did not act out of a desire to retaliate for conduct of which the employer was not aware."); *Doyle v. Advanced Fraud Sol., LLC*, 1:18CV885, 2020 WL 1305162, at *5-6 (M.D.N.C. Mar. 19, 2020) (dismissing retaliation claim where plaintiff did not allege that employer was aware of EEOC charge).

Nor may plaintiff's retaliation claims rest solely on TSA's rejection of her LBDO application.  Defendant denied plaintiff the LBDO position on October 19, 2015.  ECF 1, ¶ 110. Yet, Ms. Ryan's most recent protected activity—filing the EEO complaint—occurred four months earlier.  *Id.* ¶ 109.  This gap between the protected activity and the adverse action is insufficient,

without more, to infer a casual connection to support a retaliation claim.  See *Wilcoxon v. DECO Recovery Mgmt., LLC*, 925 F. Supp. 2d 725, 732 (D. Md. 2013) (concluding that four months between the protected activity and alleged retaliatory conduct did not establish "temporal proximity"); *Clarke*, 962 F. Supp. 2d at 790 (noting that a "lapse of as little as two months between the protected activity and an adverse employment action" weakens the inference of causality).

In "cases where 'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.'"  *Lettieri v. Equant, Inc*., 478 F.3d 640, 650 (4th Cir. 2007) (citation omitted).  But, plaintiff advances no meaningful allegations of animus for the period spanning April 2015 to October 2015.  The only allegation during that time included in the Complaint is that Colin Rhodes, a MBDO, called plaintiff "'a racist' and . . . referred to her as being 'old.'"  *Id.* ¶ 43.  But, this allegation had no bearing on Mr. Marzola, the selecting official.  Therefore, it does not support plaintiff's claim that she was denied the LBDO job because of her protected activities.

Accordingly, I shall dismiss Counts III and IV, without prejudice.

## IV.    Conclusion

For the reasons stated above, I shall grant the Motion (ECF 7).  An Order follows, consistent with this Memorandum Opinion.


Date:   April 3, 2020                                          _____/s/_____
                                                                                 Ellen Lipton Hollander
                                                                                 United States District Judge

43