IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTINA RYAN
*Plaintiff*,

v.                                                      Civil Action No. ELH-19-1968

CHAD WOLF
*Defendant*

**MEMORANDUM OPINION**

In this employment discrimination case, plaintiff Christina Ryan, an employee of the Transportation Security Administration ("TSA"), a component of the Department of Homeland Security ("DHS"), has filed suit against Chad Wolf, then the Acting Secretary of DHS. ECF 16 ("Amended Complaint").[1]   Ryan, a Caucasian woman born in 1960, alleges that she was reprimanded and not selected for two promotions because of her race and her age, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA").

The original Complaint (ECF 1) contained four counts.  In Count I, plaintiff asserted a claim of "RACIAL DISCRIMINATION (Disparate Treatment)" under Title VII.  In Count II, she asserted an ADEA claim of age discrimination based on disparate treatment.  Count III alleged a Title VII claim of "RETALIATION (Adverse Actions and Protected Activity Deterrents)."  And, Count IV asserted retaliation under the ADEA, on the same grounds asserted as to Count III.  By

---

[1] The suit was initially filed against Kevin McAleenan, who was then the Acting Secretary of DHS.  Chad Wolf succeeded McAleenan, but he resigned on January 11, 2021.  Neither party has sought to substitute another party. Pursuant to Federal Rule of Civil Procedure 25(d), Wolf's successor, DHS Secretary Alejandro Mayorkas, shall be substituted as the defendant.

Memorandum Opinion (ECF 14) and Order (ECF 15) of April 3, 2020, I granted defendant's motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6), without prejudice.  In my view, the allegations in the Complaint failed to support plausible claims for relief. However, I granted plaintiff leave to amend.

Plaintiff timely filed her Amended Complaint. ECF 16; ECF 16-1 (Redline version). The Amended Complaint reiterates Counts I through IV of the Complaint but includes additional facts.

Defendant has again moved to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  ECF 17. The motion is supported by a memorandum (ECF 17-1) (collectively, the "Motion") and six exhibits.  ECF 17-2 to ECF 17-7. Plaintiff opposes the Motion (ECF 20-1, "Opposition"), and has submitted one exhibit. ECF 20-2. Defendant has replied. ECF 21.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall construe the Motion (ECF 17) as one to dismiss, and I shall deny the Motion.

## I.    Background[2]

As noted, Ms. Ryan is a Caucasian woman who was born in 1960.  ECF 16, ¶¶ 15, 16.  She has worked for TSA at Baltimore Washington International Thurgood Marshall Airport ("BWI") since 2004, and as a Master Behavior Detection Officer ("MBDO") since 2014. *Id.* ¶ 17.  Between 2007 and 2012, plaintiff "filed a number of" Equal Employment Opportunity ("EEO") complaints against TSA.  *Id.* ¶ 6.  She also filed an EEO Complaint on June 13, 2015.  *Id.* ¶ 10.

---

[2] As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).  Further, the Court may consider documents attached to the Complaint or the Motion, "so long as they are integral to the complaint and authentic."  *Philips v. Pitt Cty. Mem'l Hosp*., 572 F.3d 176, 180 (4th Cir. 2009).

Ryan alleges that she "met and/or exceeded" TSA's "legitimate job expectations" at all relevant times. *Id.* ¶ 72. And, for the period from October 1, 2014 to September 30, 2015, plaintiff received an "overall rating of 'Exceeded Expectations.'" *Id.* ¶ 71.

Erica Foster Gibbs, an African American female born in 1985, served as plaintiff's first-line supervisor from May 2014 to October 2014. *Id.* ¶ 21. John Chambers III, an African American born in 1962, became plaintiff's first-line supervisor on or about October 30, 2014. *Id.* ¶ 22. Scott Wood, a Caucasian born in 1961, was Ms. Ryan's second-level supervisor throughout the relevant period. *Id.* ¶ 23. According to plaintiff, the "upper management officials micromanaged" her "work performance but did not do the same with her African-American colleagues." *Id.* ¶ 70.

Plaintiff claims that in May or June of 2014, she informed Ms. Gibbs that she had approximately ten online learning courses to complete. *Id.* ¶ 24. In response, Ms. Gibbs allegedly "put her face within one (1) inch of Plaintiff's face with a hostile look" and prevented Ms. Ryan from exiting the room. *Id.* Following this interaction, Ms. Ryan asked Mr. Wood to assign her to a different supervisor. *Id.* ¶ 25. According to plaintiff, Mr. Wood denied Ms. Ryan's request in June 2014, telling her that if she wanted a transfer, she would need to get a court order. *Id.* Plaintiff perceived that comment as a reference to a prior EEO complaint she had filed in 2007 concerning sexual assault and harassment, which resulted in a court order. *Id.* Moreover, plaintiff alleges that Mr. Wood granted similar requests for transfers in the summer of 2014 by MBDOs Chadea Grant and Brandy Durant, both of whom are African American. *Id.* ¶ 28.

In the Amended Complaint, plaintiff also alleges that Ms. Gibbs regularly mistreated her throughout July and August of 2014. *Id.* ¶¶ 29-33. Ms. Gibbs told plaintiff that she was the only "white Caucasian" MBDO on the morning shift. *Id.* ¶ 30. She also "scowled" at Ms. Ryan "[o]n several occasions" in June of 2014, when Ms. Ryan received a "work call." *Id.* ¶ 29. In addition,

Ms. Gibbs interrupted plaintiff on July 5, 2014, when she was on a business call with information technology personnel, and forced her to end the call. *Id.* ¶ 31. Further, "in a demeaning and condescending manner," Ms. Gibbs told plaintiff not to lean on a stanchion. *Id.* ¶ 32.

In July 2014, after Ms. Ryan complained to Mr. Wood about Ms. Gibbs's "hostile behavior," Ms. Gibbs "chastised" Ms. Ryan "in an attempt to convince [her] to modify her written statement . . . ." *Id.* ¶ 33. Further, on or about August 31, 2014, Ms. Gibbs accused Ms. Ryan of exhibiting unsatisfactory work performance and demanded a counseling session with Ms. Ryan. *Id.* ¶ 34. According to plaintiff, she was not permitted to have a witness at the session. *Id.* On August 31, 2014, plaintiff reported "Ms. Gibbs' hostile behavior" to Mr. Wood and to David Marzola, Jr., a Caucasian born in 1961 and an Assistant Federal Security Director at BWI. *Id.* ¶¶ 34, 35.

In August or September 2014, plaintiff allegedly complained to Ms. Gibbs and Mr. Wood about the preferential treatment afforded to MBDO James Clapp, an African American born in 1989. *Id.* ¶ 36. According to plaintiff, Clapp had "attendance issues and exhibited poor job performance, but was not reprimanded." *Id.*

Plaintiff alleges that on October 12, 2014, Mr. Wood and Mr. Marzola "falsely accused" her of spraying an African American passenger with Lysol. *Id.* ¶ 37. Although Ms. Ryan complained to Mr. Marzola on November 14, 2014, about the falsity of the allegations, he failed to address Ms. Ryan's complaint. *Id.*

According to plaintiff, Mr. Marzola "made fun" of her in November of 2014, telling her that "'sometimes you can only see an elbow in the video.'" *Id.* ¶ 38. She avers that this was a reference to plaintiff's 2007 sexual assault and harassment complaint. *Id.*

On November 12, 2014, Plaintiff filed a grievance with the TSA's "National Resolution Center regarding her performance appraisal" for the period of October 1, 2013 to September 30, 2014. *Id.* ¶ 39. In her grievance, she claimed that Ms. Gibbs "treated her 'differently,'" "subjected her to 'verbal abuse' and 'mistreatment,'" and "retaliated against her for reporting [Ms. Gibbs] to Mr. Wood and Mr. Marzola." *Id.* Plaintiff, Ms. Gibbs, and Mr. Wood participated in a "Non-EEO Mediation" regarding plaintiff's grievance on January 20, 2015. *Id.* ¶ 41.

Also on November 12, 2014, plaintiff alleges that she complained to Mr. Wood and Mr. Marzola about Mr. Wood's "'court order' comment" and that "African-American employees had been transferred out of Ms. Gibbs' group whereas Plaintiff's request for a transfer was denied." *Id.* ¶ 40.

On January 29, 2015, Mr. Wood issued a "Letter of Reprimand" ("LOR"), "a type of formal disciplinary action," to Ms. Ryan.  ECF 17-3 at 22-24; *see* ECF 16, ¶ 42.  It states, in part, ECF 17-3 at 22-24:

> On October 10, 2014, while performing Behavior Detection and Analysis (BDA), you communicated to Operational Test Team (OTT) Member Kelly Duppins, that the [fatigue] mat she was standing upon (yellow borders) were for the exclusive use of BDOs. You advised her that if she needed/wanted a mat she could purchase one at Walmart. OTT Duppins was asked to remove herself from the mat. On the same day, you approached Test Team Lead Don Bennett and asked for OTT Duppins name.
>
> After this incident on or about October 13, 2014, you were overheard telling one of the OTT Duppins Management Team Members that a "sit down" job needed to be located for her so she didn't have to complain about standing on the floor and/or use mats that didn't belong to her.
>
> The interactions were unsolicited and the comments were inappropriate and unprofessional. Furthermore, these interactions occurred in the public area and reflected negatively on you. You have been trained on workforce engagement and that display was not appropriate.

In the LOR, Mr. Wood cited provisions of the TSA Code of Conduct and Handbook that he claimed had been violated.  Further, he explained that he had weighed the "nature and seriousness of the misconduct" against "mitigating factors," such as Ms. Ryan's employment at TSA since 2004 and her "otherwise satisfactory performance record."  *Id.* at 23.  Therefore, Mr. Wood determined that the issuance of the LOR was an "appropriate" penalty.  *Id.*

Plaintiff claims that before this incident, she "had a clean personnel file." ECF 16, ¶ 42. Moreover, plaintiff complains that she was not given an opportunity to have a "Pre Decision Meeting" before the LOR was issued, which is allegedly a policy and procedure of TSA. *Id.* ¶ 49.

Nathan Wesley, a Behavior Detection Officer ("BDO") who worked with plaintiff on October 10, 2014, allegedly said that he did not witness plaintiff make any inappropriate comments to or about Ms. Duppins on that day. *Id.* ¶ 47. According to plaintiff, her colleagues "wrote false statements" about her conduct on October 10, 2014, which led to the LOR. *Id.* ¶ 46.  In addition, plaintiff alleges that non-Caucasian and/or "substantially younger" BDOs "have expressed anger towards other individuals regarding utilization of fatigue mats and have made inappropriate comments," but were not disciplined for doing so. *Id.* ¶ 44.

Plaintiff maintains that the LOR "continues to substantially affect the terms and conditions of her employment." *Id.* ¶ 50. According to plaintiff, TSA used the LOR "as a basis to not promote" her in April and October of 2015. *Id.* ¶ 43. And, TSA used the letter "as a basis to issue her another Letter of Reprimand on March 8, 2020." *Id.* ¶ 50.

In February 2015, plaintiff applied for a vacant position of Supervisory Behavior Detection Officer ("SBDO").  *Id.* ¶ 51.  Mr. Marzola was the selection official, although he did not personally interview the applicants.  *Id.* ¶ 54.  Ms. Ryan interviewed for the SBDO position via telephone on March 25, 2015, and she "received a consensus score of" 27 after her interview.  *Id.* ¶ 52.

On April 20, 2015, Ms. Ryan was notified that she was not chosen for the position. *Id.* ¶ 53. But, five other employees were selected to serve as SBDOs, even though the job announcement only included four available positions. *Id.* These employees included Francesca Torrance (Caucasian, under 40); Signora Carmouche (African American, under 40); Detlev Hetzler (Caucasian, under 40); Morris Cobb (African American, born in 1975); and John Chambers III (African American, born in 1962). *Id.* According to plaintiff, Ms. Carmouche "declined" her offer, at which point Brandy Durant (African American, born in 1983) was selected for the remaining SBDO position. *Id.* ¶¶ 54, 55.

Brandy Durant only received a consensus score of 25 after her interview. *Id.* ¶ 15. Therefore, according to plaintiff, because she (plaintiff) had a score of 27, she was "plainly superior to Ms. Durant and should have received a promotion" over her, but she was not selected because of the LOR. *Id.* ¶¶ 56, 57.

Mr. Marzola was asked during the EEO investigation to explain what made the selectees better qualified for the position than plaintiff. ECF 17-3 at 15-16. He explained, *id.* at 16: "Ms. Ryan had discipline on her record, which was one of the disqualifying factors that I took into account." In contrast, the selected applicants "all had clean disciplinary records." *Id.* Further, Mr. Marzola stated that he "took into account the TOPS performance evaluations, resume, interview scores, disciplinary records of each candidate" and "Ms. Ryan did not rate as high as the candidates that [he] chose." *Id.*[3]

On March 13, 2015, plaintiff contacted Daniel Ricketts, an "EEO Counselor" in TSA's Civil Rights Division, regarding filing an EEO claim in response to the LOR she received on

---

[3] The parties do not define "TOPS." But, according to plaintiff, "TOPS scores" are "synonymous with performance evaluations." ECF 20-1 at 9.

January 29, 2015. ECF 16, ¶ 7.  Plaintiff  submitted an "Equal Employment Intake Sheet" to TSA on April 3, 2015.  *Id.* ¶ 8.  Then, on April 27, 2015, Ms. Ryan contacted an EEO Counselor.  *Id.* ¶ 9.  And, on June 13, 2015, plaintiff filed a formal EEO Complaint, alleging discrimination based on race, color, and age, as well as retaliation for engaging in protected EEO activity and opposing racial discrimination in the workplace. *Id.* ¶ 10.

In August 2015, Ms. Ryan applied for a vacant position as an "Expert Transportation Security Officer - Lead Behavior Detection Officer" ("LBDO").  *Id.* ¶ 60.  Again, Mr. Marzola was the selecting official.  *Id.* ¶ 63.   Ms. Ryan learned on October 19, 2015, that she was not selected for the position.  *Id.*  Rather, the LBDO positions were filled by the following applicants: Maria Little (Hispanic, born 1963); William Gilbert (non-Caucasian, born 1960); Chadea Grant (African American, born 1986); and Robert Williams (African American, born 1982).  *Id.*; ECF 17-3 at 20.   Here too, Mr. Marzola made the selections based on the applicants' "resume, interviews, [and] TOPS ratings," and he claimed that he excluded Ms. Ryan due to her disciplinary record.  ECF 17-3 at 20-21.  In contrast, none of the selectees had disciplinary history at the time that they were selected.  *Id.* at 21.

According to plaintiff, Mr. Williams had failed the BDO certification test around the time he applied for the position. ECF 16, ¶ 64. In contrast, plaintiff had passed the BDO certification test in May 2014, thus "demonstrating she was 'plainly superior' to him and that she would have been selected," if not for the LOR. *Id.* ¶¶ 64, 65.

A few days before plaintiff was rejected for the LBDO position, on October 16, 2015, MBDO Colin Rhodes, a Hispanic born in 1991, who was also supervised by Mr. Wood and Mr. Chambers, allegedly "physically intimidated" plaintiff. *Id.* ¶ 62. Further, plaintiff claims that on "several occasions" from August 2015 to February 2016, Rhodes asked plaintiff "questions she

found uncomfortable," including "(1) whether she was dating another employee; (2) where she lived; (3) where she went on vacation; (4) what she did for fun; (5) whether she was a grandmother; etc." *Id.* ¶ 69. And, on one occasion, Rhodes allegedly called plaintiff a "racist" and referred to her as being "old." *Id.* ¶ 62.

On October 31, 2015, Mr. Cobb and Mr. Chambers "called" Ryan "into the Coordination Center Room for an Interest-Based Conversation" and "accused her of exhibiting unsatisfactory work performance on" October 16, 2015, the day she was allegedly physically intimidated by Rhodes. *Id.* ¶ 67. According to plaintiff, Mr. Cobb and Mr. Chambers did not allow her to have a witness at the conversation and recorded the conversation without her consent. *Id.* ¶¶ 67, 68. They also allegedly told her that "she was obsessed with 'fatigue mats.'" *Id.* ¶ 67.

In November and December 2015 and in January 2016, plaintiff sought to amend her EEO complaint. *Id.* ¶ 12. The requests were granted. *Id.* ¶ 13.

In response to the EEO Complaint, TSA conducted an investigation and, on August 3, 2016, TSA notified plaintiff that the Report of Investigation ("ROI") was completed. ECF 17-2.[4] Defendant submitted portions of the ROI as an exhibit to its Motion. *See* ECF 17-3 at 1-24.

TSA forwarded to plaintiff a copy of the investigative file and provided plaintiff with notice of her right to request a hearing before an Administrative Judge ("AJ") with the Equal Employment Opportunity Commission ("EEOC") or, alternatively, to receive a Final Agency Decision ("FAD") from DHS. *Id.* Ms. Ryan requested a hearing before an AJ. *See* ECF 17-4.

On December 6, 2017, the AJ issued a "Discovery Order," providing the parties with 90 days to engage in discovery. ECF 17-6 at 4. Pursuant to the Discovery Order, each party was entitled to 30 interrogatories, 30 requests for production, and 30 requests for admissions. *Id.*; *see*

---

[4] The ROI exceeds 1700 pages. *See* ECF 17-1 at 4 n.4.

ECF 17-7 (TSA Responses to Plaintiff's Interrogatories).  Further, TSA was directed to "make employees available for depositions."  *Id.*  In particular, plaintiff sought and obtained comparator information.

In the administrative proceedings, TSA moved for summary judgment on March 21, 2018, as to plaintiff's claims of race and age discrimination, and plaintiff opposed the motion.  ECF 7-5 at 5; *see* ECF 14 at 8.  Pursuant to 29 C.F.R. § 1614.109(g), the AJ issued a "Decision" (ECF 7-5), without a hearing, on February 28, 2019, granting TSA's summary judgment motion.[5]  The AJ concluded that Ms. Ryan "failed to set forth the intentional discrimination required to make a finding of discrimination in this case" and therefore she "failed to establish, by a preponderance of the evidence, that she was discriminated against based on her race/color, age and/or reprisal for prior EEO activity."  *Id.* at 10; *see also* ECF 7-5 at 1-4 ("Order Entering Judgment").

Plaintiff appealed the AJ's ruling to the DHS Office for Civil Rights and Civil Liberties ("CRCL").  ECF 7-5 at 12.  The CRCL issued a Final Order on March 27, 2019, "fully implement[ing] the AJ's decision."  *Id.* at 15.

## II.    Standard of Review

As noted, defendant's Motion is styled as a "Motion to Dismiss Or, In the Alternative, For Summary Judgment."  ECF 17-1.  A motion styled in the alternative implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

---

[5] In my Memorandum Opinion of April 3, 2020 (ECF 14), I considered ECF 7-5 because it was referenced in and integral to the Complaint. Moreover, plaintiff did not contest materiality or authenticity. *Cf. Goodman v. Diggs*, __ F.3d__, 2021 WL 280518, at *5 (4th Cir. Jan. 28, 2021) (stating that "an amended complaint does not divest an earlier verified complaint of its evidentiary value…").

In general, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[6]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2018). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* In general, courts are guided by whether consideration of extraneous material "is likely to facilitate

---

[6] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.*

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). As the Fourth Circuit has said, when a district judge rules on a summary judgment motion prior to discovery, it is akin to "for[cing] the non-moving party into a fencing match without a sword or mask." *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014); *see Goodman v. Diggs*, __ F.3d__, 2021 WL 280518, at *5-6 (4th Cir. Jan. 28, 2021); *accord Putney v. Likin*, 656 F. App'x 632, 639 (4th Cir. 2016) (per curiam).

However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"To justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub. nom. Gardner v. Ally Fin., Inc.*, 514 F. App'x 378 (4th Cir.

2013) (per curiam).  A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874 (4th Cir. 2019); *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008) (per curiam), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted).  But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit.  *Id.* (internal citations omitted).  According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'"  *Id.* at 244-45 (internal citations omitted).

The record in this case is well developed, in light of the administrative process before the EEOC that preceded the litigation, which included the opportunity for discovery.  ECF 17-6 at 2 (AJ's Discovery Order). As noted, the AJ's discovery order provided that each party was permitted to propound interrogatories, requests for production of documents, and requests for admissions. ECF 17-6 at 4-5.  And, the AJ required TSA to make government employees available for depositions.  *See id.* at 4; *cf. McCray*, 741 F.3d at 484 (holding that district court should have allowed the plaintiff, who alleged racial discrimination, to depose her supervisors before resolving defendants' motion for summary judgment).  Thereafter, plaintiff served written discovery requests and TSA provided substantive responses.  ECF 17-7.

However, in her Opposition, plaintiff argues that defendant makes contentions in the Motion that she "cannot fully oppose at this time" without "the opportunity to engage in discovery[.]" ECF 20-1 at 2.  Specifically, she maintains that discovery is necessary to "oppose Defendant's contention that all of the individuals who were selected for the vacant SBDO and LBDO positions had clean disciplinary records." *Id.* at 9. Ms. Ryan also asserts that she needs additional discovery so she may compare her "ratings and performance evaluations with those of the individuals who were selected for" the vacancies. *Id.* at 9-10. Plaintiff has also submitted an Affidavit (ECF 20-2) with the same assertions about her need to engage in discovery. *Id.* ¶¶ 1-4.

The case of *McCray*, 741 F.3d 480, is informative here. In *McCray*, the Fourth Circuit considered whether the district court erred when it granted summary judgment to the defense before plaintiff had an opportunity to conduct discovery. *Id.* at 483. The plaintiff in *McCray* had been an employee of the MTA for more than 40 years before she filed an EEOC Charge alleging, *inter alia*, discrimination under Title VII, based on race and gender. *Id.* at 481-82. In the district court, the MTA moved to dismiss the suit and the plaintiff moved for more time to conduct

discovery, pursuant to Rule 56(d). *Id.* at 482. The district court denied plaintiff's Rule 56(d) motion, because the parties had already engaged in discovery during the EEOC investigation and had submitted substantial documentary evidence in support of their positions. *Id.* Therefore, the court converted the MTA's motion to one for summary judgment.

On appeal, the Fourth Circuit reiterated that discovery is appropriate when "the main issue" is "one of motive" and when "most of the key evidence lies in the control" of the party moving for summary judgment. *Id.* at 484. The Fourth Circuit determined that the plaintiff's Title VII claims required the plaintiff to show "that she was fired because of discriminatory reasons," and that such evidence was within the control of the MTA. *Id.* "Absent discovery," said the Court, the plaintiff lacked "adequate access to this evidence, and therefore no way to shield herself from a premature summary judgment motion." *Id.* The Fourth Circuit concluded that summary judgment was premature under Rule 56(d). *Id.* at 481, 484.

As in *McCray*, Ms. Ryan's claims require her to show that she was disciplined and not selected for promotions because of discriminatory reasons. And, such evidence is within the control of the TSA. Accordingly, notwithstanding that the parties have engaged in limited discovery, I will consider defendant's Motion under Fed. R. Civ. P. 12(b)(6), without converting it to a summary judgment motion under Rule 56. *See Adams Housing, LLC v. City of Salisbury, Md.*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam) (A party "needs an 'adequate opportunity' to present its case and 'demonstrate a genuine issue of material fact.'") (quoting *U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989)).

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty.*

15

*Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, *Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation

16

of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to

dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009).  Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'"   *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, ___ U.S. ___, 135 S. Ct. 2218 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment.  *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n*

*v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) ) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'"

*Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

As noted, the Motion is supported by six exhibits. ECF 17-2 is a letter dated August 3, 2016, informing plaintiff that TSA had completed its investigation and informing her of her right to request a hearing before an EEOC AJ. ECF 17-3 contains excerpts of the ROI. ECF 17-5 contains emails and statements pertaining to the Letter of Reprimand. ECF 17-6 is the AJ's Discovery Order. And, ECF 17-7 is the TSA's response to plaintiff's interrogatories, which were propounded by plaintiff to defendant during discovery. The opposition is supported by one exhibit: plaintiff's affidavit (ECF 20-2).

The materials pertaining to plaintiff's pursuit of administrative remedies are integral to the Amended Complaint. Moreover, plaintiff has not contested the materiality or the authenticity of defendant's exhibits. Accordingly, I may consider these documents in analyzing various contentions presented by the parties, without converting defendant's motion to one for summary judgment. In contrast, plaintiff's affidavit is not referenced in the Amended Complaint, is not integral to the Amended Complaint, and is not a publicly available document. Therefore, in resolving the Motion, I shall not consider ECF 20-3.

## III.     Discussion

Defendant moves to dismiss the Amended Complaint on the ground that it fails to cure the deficiencies that warranted dismissal of the Complaint and fails to state a claim for which relief may granted. ECF 17-1.  In particular, TSA argues that plaintiff again fails to allege plausible failure-to-promote claims based on race or age because her use of comparators is still deficient. *Id.* at 12-14. According to defendant, the "comparator evidence negates, rather than supports, a claim of discrimination." *Id.* at 14.  Moreover, defendant maintains that the Amended Complaint does not plausibly allege that plaintiff engaged in protected activity that was proximate to adverse actions, so as to assert a claim of retaliation. And, it argues that there are no allegations that the LOR was motivated by discrimination or retaliation. *Id.* at 18-20.

Plaintiff counters that she has stated plausible race and age discrimination claims for failure to hire because non-Caucasian and younger employees engaged in inappropriate behavior without being disciplined and she was superior to the applicants who were selected for promotions.  *Id.* at 13-17.  Further, she insists that the Amended Complaint alleges a viable retaliation claim because she received the LOR and was passed over for the SBDO and LBDO positions shortly after engaging in protected activities.  *Id.* at 18-19.

### A.  Title VII Generally

Title VII prohibits an employer, *inter alia*, from discriminating against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2.  The phrase "terms, conditions or privileges of employment" is "an expansive concept."  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) (quotation marks and citation omitted).  Title VII also bars retaliation based on an employee's opposition to conduct made unlawful by Title VII, or for

participation in a Title VII investigation or proceeding.  42 U.S.C. § 2000e-3; *see e.g.*, *Evans v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019); *Ray v. Int'l Paper Co.*, 909 F.3d 661, 666 (4th Cir. 2018); *Netter v. Barnes*, 908 F.3d 932, 937 (4th Cir. 2018); *Strothers v. City of Laurel*, 895 F. 3d 317, 326-27 (4th Cir. 2018); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc); *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014).

Title VII's prohibitions apply to private sector employees as well as federal employees. *Nielsen v. Hagel*, 666 F. App'x 225, 227 (4th Cir. 2016) (citing 42 U.S.C. § 2000e-16(a)).[7]  Before filing suit under Title VII, however, a plaintiff must exhaust administrative remedies. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 181 (1989) (private sector employees), *superseded on other grounds by* 42 U.S.C. § 1981(b); *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976) (federal employees); *see also McCray*, 662 F. App'x at 224. Notably, "[t]he administrative remedies available for federal employees are significantly broader" than those available to employees in the private sector.  *Laber v. Harvey*, 438 F.3d 404, 416 (4th Cir. 2006) (en banc); *see* 42 U.S.C. § 2000e-16(c) (setting forth the conditions under which a federal employee may initiate a civil suit under Title VII).  However, exhaustion under Title VII is not jurisdictional; it is instead a "claim-processing rule[] that must be timely raised to come into play." *Fort Bend Cty. v. Davis*, ___ U.S. ___, 139 S. Ct. 1843, 1846, 1850 (2019).

---

[7] Title VII initially did not protect federal employees. *See* 42 U.S.C. § 2000e(b) (excluding the United States from the definition of "employer"). In 1972, however, Congress amended Title VII to provide that a federal employee who has exhausted her administrative remedies "may file a civil action as provided in section 2000e-5 of this title" against the "head of the department, agency, or unit, as appropriate." 42 U.S.C. § 2000e-16(c); *see Bullock v. Napolitano*, 666 F.3d 281, 283-84 (4th Cir. 2012), *cert. denied*, 568 U.S. 882 (2012).

In general, *at trial* a plaintiff "may establish a discrimination claim under Title VII through two avenues of proof." *Thomas v. Delmarva Power & Light Co.*, 715 F. App'x 301, 302 (4th Cir. 2018) (per curiam) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)).   The plaintiff's first avenue is to offer "'direct or indirect'" evidence of discrimination under "'ordinary principles of proof.'"   *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997).   The plaintiff's second avenue is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   *See, e.g.*, *Young v. United Parcel Serv., Inc.*, 569 U.S. 206, 228-29 (2015) (construing the Pregnancy Discrimination Act); *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (discussing the *McDonnell Douglas* framework).

As indicated, the avenues of proof pertain to trial.   At this juncture, reference to these methodologies merely serves to inform a court's evaluation of a motion to dismiss or for summary judgment.   *See Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019) (recognizing that "a Title VII plaintiff may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas Corp.* . . ."); *Pettis v. Nottoway Cty. Sch. Bd.*, 592 F. App'x 158, 160 (4th Cir. 2014) (same).

The *McDonnell Douglas* proof scheme is "a procedural device, designed only to establish an order of proof and production."   *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted).   Notably, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination."   *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).   Under the *McDonnell Douglas* approach, the "'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with

the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see also Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 726 (4th Cir. 2019); *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011).

If the plaintiff chooses to proceed *at trial* under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Abilt v. Cent. Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017). Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, the plaintiff is generally required to show that the employer took adverse action against an applicant "under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253.

To state a prima facie claim of racial discrimination under *McDonnell Douglas*, the plaintiff must allege "'(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'" *Goode v. Cent. Va. Legal Aid Soc.*, *Inc.*, 807 F.3d 619, 626 (4th Cir. 2015) (quoting *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012)); *see also Matias v. Elon Univ.*, 780 F. App'x 28, 31 (4th Cir. 2019) (per curiam); *Rayyan v. Va. Dep't of Transp.*, 719 F. App'x 198, 203 (4th Cir. 2018).

If a plaintiff establishes a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle*, 650 F.3d at 336; *see Reeves*, 530 U.S. at 142; *Hurst v. District of Columbia*, 681 F. App'x 186, 189-90

(4th Cir. 2017) (per curiam).  "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255.  In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11.  The plaintiff must then prove, by a preponderance of evidence, "that the [employer's] proffered reason was not the true reason for the employment decision" and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516-20; *Adams v. Trs. of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original).

Conversely, if the defendant does not submit evidence of a legitimate basis for its actions, the factfinder may "infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978). And, if the defendant fails to meet the burden of producing "evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr.*, 509 U.S. at 509 (emphasis in original). This is because a legal presumption of intentional discrimination has been established. *Id.* at 510 n.3; *see Burdine*, 450 U.S. at 255 n.8 ("[T]he allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.").

As indicated, these two approaches establish the common methods by which a plaintiff may prove intentional employment discrimination *at trial*. *See Burns*, 96 F.3d at 731. At the motion to dismiss stage, however, a plaintiff need not establish a prima facie case of discrimination under *McDonell Douglas*. In *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Supreme Court explained that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." The Court observed that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511. Thus, the Court said: "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ." *Id.* at 515; *see also McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584 (4th Cir. 2015), *cert. denied*, ___ U.S. ___, 136 S. Ct. 1162 (2016).

However, as the Second Circuit has noted, the Supreme Court's holding in *Swierkiewicz* is arguably in tension with the Court's subsequent rulings in *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). On the one hand, "[r]eading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent." *Id.* at 309. On the other hand, in *Twombly*, the Court said that a plaintiff must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And, in *Iqbal*, the Court clarified that the heightened pleading standard of Twombly is applicable in "'all civil actions' . . . ." *Iqbal*, 556 U.S. at 684.

In *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017), the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies[.]" Thus, the question at the motion to dismiss stage is whether the

plaintiff has stated "a plausible claim for relief under Title VII . . . ." *Ciociola v. Balt. City Bd. of Sch. Comm'rs*, CCB-15-1451, 2016 WL 125597, at *4 (D. Md. Jan. 12, 2016).

## B.  The ADEA

The ADEA "'broadly prohibits arbitrary discrimination in the workplace based on age.'" *Trans World Airlines, Inc.*, 469 U.S. at 120 (quoting *Lorillard v. Pons*, 434 U.S. 575, 577 (1978)); *see also McKennon v. Nashville Banner Pub. Co*., 513 U.S. 352, 357 (1995).   It applies to individuals 40 years of age or older.  *See* 29 U.S.C. § 631(a); *Bodkin v. Town of Strasburg*, 386 F. App'x 411, 413-14 (4th Cir. 2010) (per curiam).

Like Title VII, the ADEA applies to both employees in the private sector and to federal employees.  *Laber*, 438 F.3d at 430; *see Baqir v. Principi*, 434 F.3d 733, 744 (4th Cir. 2006).  And, as with Title VII, the ADEA is subject to certain exhaustion requirements.  *See Webb v. Potomac Elec. Power Co.*, TDC-18-3303, 2020 WL 1083402, at *4 (D. Md. Mar. 6, 2020) (considering the exhaustion requirements of both Title VII and the ADEA under Rule 12(b)(6)); *Johnson v. Silver Diner, Inc*., PWG-18-3021, 2019 WL 3717784, at *2 (D. Md. Aug. 7, 2019) (same).

The federal-sector provision of the ADEA, codified at 29 U.S.C. § 633a, bars age discrimination against federal employees.  It provides that "[a]ll personnel actions" involving federal employees "who are at least 40 years of age . . . shall be made free from any discrimination based on age." *Id.* § 633a(a).  Further, § 633a authorizes "[a]ny person aggrieved" to "bring a civil action" for "such legal or equitable relief as will effectuate the purposes" of the ADEA.  *Id.* § 633a(c).

A plaintiff may establish claims of discrimination and retaliation under the ADEA using the *McDonell Douglas* burden-shifting framework, outlined earlier.  *See Reeves*, 530 U.S. at 142 (applying *McDonell Douglas* to ADEA claim); *Dufau v. Price*, 703 F. Appx 164, 166 (4th Cir.

2017) (per curiam); *Bodkin*, 386 F. App'x at 413; *Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir. 2004).  But, at this stage, a plaintiff "must only plausibly allege" a "statutory claim." *Boney v. Trs. of Cape Fear Cmty. Coll.*, 366 F. Supp. 3d 756, 763 (E.D.N.C. 2019) (alteration in *Boney*) (quoting *Woods*, 855 F.3d at 648).

To allege a prima facie ADEA claim, the plaintiff must assert that "(1) [s]he is a member of a protected class—that is, 40 years or older; (2) [s]he suffered an adverse employment action; (3) [s]he was performing [her] job duties at a level that met [her] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or [s]he was replaced by a substantially younger person." *Bodkin*, 386 F. App'x at 413-14 (citations omitted) (some alterations in *Bodkin*).

To prevail under the ADEA, at least with respect to the federal government as employer, a plaintiff need not prove "that age was a but-for cause of" the challenged employer decision. *Babb v. Wilkie*, __ U.S. __, 140 S.Ct. 1168, 1177 (2020). This is because the federal sector provision of the ADEA, in contrast with the ADEA's private-sector provision, "expressly impose[s] liability if age discrimination plays a part in a federal employment decision." *Id.* at 1175 (citing 29 U.S.C. § 633a(a)). However, proof that age was a but-for cause of a personnel action will be "important in determining the appropriate remedy." *Id.* at 1177. A plaintiff cannot "obtain reinstatement, backpay, compensatory damages, or other forms of relief" without showing that age discrimination was a but-for cause of the employment decision. *Id.*

## C.  Disparate Treatment (Counts I and II)

In Count I, plaintiff lodges a claim for race discrimination, in violation of Title VII.  *See* ECF 16, ¶¶ 71-108. And, in Count II, plaintiff alleges that her age was the but-for cause of her discriminatory treatment.  *Id.* ¶¶ 109-145.

TSA has moved to dismiss Counts I and II, asserting that the Amended Complaint still lacks allegations sufficient to support the reasonable inference that its employment decisions were motivated by racial or age-based animus.  ECF 17-1 at 13-15.

In my Memorandum Opinion of April 3, 2020, I determined that the Complaint failed to state a claim for race or age discrimination on the basis of the LOR.  ECF 14 at 33. And, plaintiff's claims based on her non-selection for the SBDO and LBDO positions failed because she did not allege facts that could support the inference that TSA was motivated by discriminatory intent. *Id.* at 34-35. In my view, the Amended Complaint cures these deficiencies by alleging additional facts about the LOR and plaintiff's comparators.

The elements of a prima facie case of discrimination are: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class."  *Coleman*, 626 F.3d at 190 (4th Cir. 2010) (citation omitted). An "adverse employment action" is one that "'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *see James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004).

A plaintiff is "not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010), *cert. denied*, 562 U.S. 1219 (2011); *see Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545-46 (4th Cir. 2003).  But, "[w]here a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination," the plaintiff must

demonstrate at trial that the comparator is similarly situated in all relevant respects. *Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017); *see Irani v. Palmetto Health*, 767 F. App'x 399, 420 (4th Cir. 2019) (per curiam); *Haywood*, 387 F. App'x at 359; *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008).

Plaintiff seeks to assert claims of disparate treatment based on similarly situated comparators. Therefore, she must allege facts showing that she is "similar in all relevant respects to [her] comparator," including "that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haywood*, 387 F. App'x at 359 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)); *see Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 n.10 (D. Md. 2013), *aff'd*, 576 F. App'x 199 (4th Cir. 2014) (per curiam).

Of course, the comparison "'will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same set of circumstances.'" *Haynes*, 922 F.3d at 223-24 (citation omitted); *see Irani*, 767 F. App'x at 420. Nevertheless, "[i]f a plaintiff wishes to prove that a defendant's legitimate, non-discriminatory explanation is pretext by pointing to other employees who were treated differently, '[t]he similarity between comparators . . . must be clearly established in order to be meaningful.'" *Swaso*, 698 F. App'x at 748 (citation omitted); *see, e.g.*, *Lightner*, 545 F.3d at 265 (rejecting comparison evidence as "too loose" because plaintiff and comparator held different job positions). Thus, a complaint's conclusory assertions that the plaintiff and a co-worker are on equal footing is insufficient to nudge a discrimination claim across the line from conceivable to plausible. *See Swaso*, 698 F. App'x at 748; *Sanchez v. Whole Foods Mkt.*, GJH-18-3106, 2019 WL 3717771, at *4 (D. Md. Aug. 5, 2019);

*Bowen v. Md. Dept. of Pub. Safety & Corr. Servs.*, RBD-17-1571, 2018 WL 1784463, at \*10 (D. Md. Apr. 12, 2018).

Plaintiff, a Caucasian woman born in 1960, alleges that she is a member of a protected class and was subjected to discrimination based on her race and age. ECF 16, ¶¶ 75, 111. She claims that she "met and/or exceeded" TSA's "legitimate job expectations" at all relevant times. *Id.* ¶¶ 71, 72. And, the Amended Complaint alleges that Ms. Ryan was treated less favorably than similarly situated employees as a result of her race and age. Moreover, she specifically identifies at least two non-Caucasian, younger employees as comparators: Brandy Durant and Robert Williams. In addition, plaintiff asserts three instances of adverse employment action: the issuance of the LOR and the subsequent failures to promote her to the SBDO and LBDO positions. *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999) (noting that denial of promotional opportunities can constitute adverse employment actions); *Holland v. Wash. Homes, Inc*., 487 F.3d 208, 219 (4th Cir. 2007) (finding that a written reprimand can qualify as an adverse employment action when the reprimand is accompanied by collateral consequences, such as the possibility of termination, a reduction in pay, or the denial of a promotion).

Defendant contends that these comparators fail to support plaintiff's discrimination claims. ECF 17-1 at 13-14. In particular, defendant argues that plaintiff makes "conclusory assertions" that she was "plainly superior" to Durant and Williams. *Id.* And, TSA asserts that plaintiff is not similarly situated to either of them because "it is undisputed that plaintiff had a discipline in her file and Mr. Williams [and Ms. Durant] did not." *Id.* at 14.

However, plaintiff disputes that all the selectees "had clean disciplinary records." ECF 20-1 at 9, 15. And, at this juncture, I "must accept as true all of the factual allegations contained in

the complaint," and must "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations and quotation marks omitted).

Moreover, Ryan, Durant, and Williams were all considered for promotions by the same selecting official (Mr. Marzola); they had the same second level supervisor (Mr. Wood); and had substantially similar job responsibilities at the time they applied for promotions. ECF 16, ¶¶ 54, 92, 95, 103 104; *see Forrest v. Transit Mgmt. of Charlotte, Inc.*, 245 F. App'x 255, 257 (4th Cir. 2007) ("If different decision-makers are involved, employees are generally not similarly situated."). Further, plaintiff alleges that she was more qualified for the promotions than Durant and Williams. ECF 16, ¶¶ 103, 105; *see Hispanic National Law Enforcement Association NCR v. Prince George's County*, TDC-18-3821, 2019 WL 2929025, at 14 (D. Md. July 8, 2019) (finding allegation that plaintiff was equally qualified for the promotion as the officers outside his class that received the promotion sufficient to state a claim for discrimination). Therefore, at this juncture, plaintiff has provided sufficient allegations to show that she is similarly situated to her comparators. *See Haywood*, 387 F. App'x at 359; *Herring v. Thompson*, AMD-01-3824, 2003 WL 23590541, at *5 (D. Md. May 12, 2003) (finding that because the two people who were selected for a promotion over plaintiff were not members of plaintiff's protected group, "the record evidence provides a basis for an inference of intentional discrimination").

Given the additional allegations included in the Amended Complaint, Ms. Ryan has alleged facts sufficient to "nudge" her claims against TSA "from the conceivable to plausible…" *Twombly*, 550 U.S. at 570; *cf. Bing v. Brivo*, 959 F.3d 605, 618 (4th Cir. 2020); *McCleary-Evans*, 780 F.3d at 586 (finding that plaintiff's claim that she was not selected because of bias was too conclusory to support a discrimination claim). Accordingly, I shall deny the Motion as to Counts I and II.

### D.  Retaliation (Counts III and IV)

Plaintiff alleges in Counts III and IV that defendant issued the LOR and did not select her for the SBDO and LBDO positions in retaliation for engaging in protected activities, in violation of Title VII and the ADEA, respectively.  ECF 16 at 22-34.

Courts evaluate Title VII and ADEA retaliation claims under the same three-step burden-shifting analysis set out in *McDonnell Douglas*.  *See Daniels v. Sch. Dist. of Phila*., 776 F.3d 181, 192-93 (3d Cir. 2015) (applying same analysis to retaliation claims lodged under the ADEA and Title VII); *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006) (same).  To state a claim for retaliation, a plaintiff must allege "'that (1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action.'"  *Okoli v. City of Balt.*, 648 F.3d 216, 223 (4th Cir. 2011) (citation omitted); *see Strothers*, 895 F.3d at 327; *Guessous*, 828 F.3d at 217; *Smyth-Riding v. Sci. Eng'g Servs., LLC*, 699 F. App'x 146, 151 (4th Cir. 2017); *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005).

A plaintiff must first establish that she engaged in protected activity.  The Fourth Circuit has explained that, "in the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation."  *Navy Fed. Credit Union*, 424 F.3d at 406; *see Netter*, 908 F.3d at 937.  "An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace."  *Laughlin*, 149 F.3d at 259; *see* 42 U.S.C. § 2000e-3(a). Moreover, as the Fourth Circuit has said, "[t]o fall under the protection of the opposition clause ... behavior need not rise

to the level of formal charges of discrimination. The opposition clause has been held to encompass informal protests, such as voicing complaints to employers or using an employer's grievance procedures." *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir.1981) (citation omitted).

The second element is that of an "adverse action."  In *Strothers*, 895 F.3d at 327, the Fourth Circuit explained that an "adverse *employment* action" is not the standard in a retaliation case. (Emphasis added.)  In other words, the adverse action "need not be employment or workplace-related in order to sustain a retaliation claim."  *Id.*; *see also Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) ("*Burlington Northern*") ("[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment.").

That said, "retaliatory actions do have to be 'materially adverse'—such that they 'might have dissuaded a reasonable worker' from engaging in protected activity."  *Strothers*, 895 F.3d at 327 (quoting *Burlington Northern*, 548 U.S. at 68).  In other words, "[t]he anti-retaliation provision of Title VII does not protect against 'petty slights, minor annoyances, and simple lack of good manners.'"  *Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 738 (D. Md. 2009) (quoting *Burlington Northern*, 548 U.S. at 68).  Nor does "a personal conflict alone . . . constitute retaliation."  *Spencer v. Va. State Univ.*, 919 F.3d 199, 208 (4th Cir. 2019).

Of import here, Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  *Burlington Northern*, 548 U.S. at 67; *see also Ray*, 909 F.3d at 667.  The Fourth Circuit has found that "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion" constitute adverse actions.  *Boone*, 178 F.3d at 255.

To establish causation under Title VII, the plaintiff bears the burden of establishing that the alleged retaliation "would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360; *see also Irani*, 767 F. App'x at 421. The plaintiff may proceed either by direct evidence "or by proving that any non-retaliatory justification for the [adverse action] was pretextual." *Netter*, 908 F.3d at 938; *see Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015).

To satisfy the third element—a causal connection between the protected activity and the adverse action—a plaintiff at trial must show that "the employer [took] the adverse employment action *because* the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original). Pursuant to the Supreme Court's ruling in *Nassar*, 570 U.S. at 362, "a plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."

Ordinarily, there must exist "some degree of temporal proximity to suggest a causal connection." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005). Therefore, a "'lengthy time lapse between the [defendant's] becoming aware of the protected activity and the alleged adverse . . . action'" often "'negates any inference that a causal connection exists between the two.'" *Id.* (citation omitted). And, "a lapse of as little as two months between the protected activity and an adverse employment action is 'sufficiently long so as to weaken significantly the inference of causation.'" *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 790 (D. Md. 2013) (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003)).

Nevertheless, mere temporal proximity is not necessarily enough to create a jury issue as to causation. "'Where timing is the only basis for a claim of retaliation, and gradual adverse job

actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.'" *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) (citation omitted) (affirming summary judgment where the actions that led to plaintiff's termination began before her protected activity).

Plaintiff alleges that she engaged in numerous protected activities. ECF 16 at 23-25. Specifically, Ms. Ryan alleges, *inter alia*, that she filed EEO complaints between 2007 and 2012, *id.* ¶ 147; reported Ms. Gibbs's hostile behavior to Mr. Wood and Mr. Marzola in July 2014 and August 2014, *id.* ¶¶ 149, 150; complained to Ms. Gibbs and Mr. Wood about TSA's preferential treatment of James Clapp in August and September 2014, *id.* ¶ 151; complained to Mr. Wood and Mr. Marzola in November 2014 that her African American coworkers had been transferred out of Ms. Gibbs's group, but her transfer had been denied, *id.* ¶ 153; filed a grievance with TSA's National Resolution Center on November 12, 2014, *id.* ¶ 154; participated in non-EEO mediation regarding her grievance on January 12, 2015, *id.* ¶ 155; emailed Mr. Ricketts on March 13, 2015, *id.* ¶ 164; submitted an EEO Intake Sheet on April 3, 2015, *id.* ¶ 165; initiated contact with an EEO Counselor on April 27, 2015, *id.* ¶ 167; and filed an EEOC Complaint on June 13, 2015. *Id.* ¶ 168. As a result, according to plaintiff, Mr. Wood issued the LOR in January 2015 and Mr. Marzola did not select her for the SBDO and LBDO positions in April or October 2015. *Id.* ¶ 172.

Defendant argues that the allegations in the Amended Complaint do not qualify as protected activities and are not causally connected to the adverse employment actions. ECF 17-1 at 16-18; ECF 21 at 9-10.

To be sure, some of plaintiff's allegations, viewed on their own, may not amount to protected activities under either Title VII or the ADEA. ECF 17-1 at 16. However, I am satisfied that plaintiff has sufficiently stated a claim for retaliation based on the LOR and the protected

36

activities, assessed in their totality, leading up to that letter. *See Wimbush v. Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.*, TDC-14-0525, 2016 WL 775410, at *14 (D. Md. Feb. 29, 2016) ("The plaintiff's actions are assessed in their totality, rather than as individual, discrete acts, to determine whether the plaintiff has opposed unlawful discrimination.").

As indicated, the Amended Complaint alleges that plaintiff filed a grievance with TSA's National Resolution Center on November 12, 2014. ECF 16, ¶ 154. In her grievance, plaintiff allegedly "asserted that Ms. Gibbs subjected her to 'verbal abuse' and 'mistreatment'" and "that Ms. Gibbs treated her 'differently.'" *Id.* Thereafter, on January 20, 2015, plaintiff, Ms. Gibbs, and Mr. Wood participated in a "Non-EEO Mediation" regarding plaintiff's grievance. *Id.* ¶ 155. And, the alleged adverse action—the LOR—was issued by Mr. Wood only nine days after this mediation took place. *Id.* ¶ 156.

Although Ms. Ryan did not explicitly assert discrimination in her grievance, it is enough that she complained of "verbal abuse," "mistreatment," and being treated "differently." Title VII "does not protect general complaints of unfair treatment," but "'an employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct.'" *Romeo v. APS Healthcare Bethesda, Inc.*, 876 F. Supp. 2d 577, 587 (D. Md. 2012) (quoting *Burgess v. Bowen*, 466 Fed. App'x. 272, 282 (4th Cir. 2012)).

In my view, plaintiff's complaints in the grievance and subsequent mediation, viewed in the context of plaintiff's previous complaints, *see, e.g.*, ECF 16, ¶¶ 149-153, adequately conveyed a claim of discrimination. *See Burgess*, 466 Fed. App'x. at 282 (holding that the employee's verbal complaint of being "targeted" should have conveyed to the employer a concern of racial discrimination); *Okoli*, 648 F.3d at 223–224 (although the employee did not explicitly mention

sexual harassment or convey details of the incident, the use of the word "harassment" was enough to convey to the employer that her complaint "likely encompassed sexual harassment"); *Bowman v. Baltimore City Board of School Commissioners*, 173 F. Supp. 3d 242, 248-49 (D. Md. 2016) ("Although, Bowman did not explicitly state it was racial discrimination, she did not have to be so explicit when the context clearly conveyed the purported racial impetus.").

Moreover, that the LOR was issued by Mr. Wood nine days after the mediation between plaintiff, Mr. Wood, and Ms. Gibbs is sufficient to state plausibly that there is a causal connection between the grievance and mediation and the issuance of the LOR. *See Chang Lim v. Azar*, 310 F. Supp. 3d 588, 606 (D. Md. 2018) ("On a motion to dismiss, the temporal proximity with [plaintiff's] ongoing engagement in the EEO process is sufficient to state plausibly that the [adverse employment action], by someone with knowledge of [plaintiff's] EEO complaint, were caused by a retaliatory motive."); *see also Waag v. Sotera Defense Solutions, Inc.*, 857 F.3d 179, 192 (4th Cir. 2017) ("We agreed that, for purposes of establishing a prima facie case, close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation.").

Accordingly, I shall deny the Motion as to Counts III and IV.

### IV.    Conclusion

For the reasons stated above, I shall deny the Motion (ECF 17). An Order follows, consistent with this Memorandum Opinion.

Date:   February 5, 2021

_____/s/_____
Ellen Lipton Hollander
United States District Judge